DISCIPLINARY COUNSEL v. MANNING.

[Cite as *Disciplinary Counsel v. Manning,*
111 Ohio St.3d 349, 2006-Ohio-5794.]

(No. 2006–0738—Submitted July 18, 2006—Decided November 22, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Thomas Joel Manning of Centerville, Ohio, Attorney Registration No. 0059759, was admitted to the Ohio bar in 1992.

{¶ 2} On April 18, 2005, relator, Disciplinary Counsel, filed a complaint charging respondent with professional misconduct. Respondent filed an answer to the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing on the complaint in December 2005. The panel then prepared written findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

## Misconduct

{¶ 3} In March 2000, Alfred and Nollie Combs retained respondent to represent them in a potential medical-malpractice action to be filed on Alfred's behalf.

Four months later, respondent contacted attorney Jon Lafferty at another law firm and asked for his help in litigating the potential claim. Lafferty asked for a $1,000 retainer. In November 2000, the Combses paid $1,000 to respondent with the understanding that the money would be used to hire the expert that Lafferty wanted to retain. Respondent deposited the money in his law firm's operating account.

{¶ 4} In late 2000 and early 2001, the Combses contacted respondent to check on the status of their case, but respondent did not provide any relevant information to them. In February 2001, they learned from an attorney at Lafferty's law firm that that firm was not involved with the case and had not received any money from respondent. The Combses confronted respondent with this information, and respondent told them that he had decided to handle the case himself without Lafferty's help.

{¶ 5} During the next several months, respondent falsely told the Combses on multiple occasions that he had filed a malpractice action in Montgomery County on their behalf. He also falsely told them that he had received some settlement offers from the defendant medical providers in the case. Finally, in December 2003, respondent advised the Combses to accept a $47,500 settlement offer from the defendants even though there was in fact no settlement offer from, or even a lawsuit against, the defendants. Respondent created a "Release and Confidentiality Agreement" for the nonexistent settlement, which the Combses signed upon respondent's advice. The purported settlement called for the Combses to receive three installment payments of $10,000, $10,000, and $27,500 from the medical providers. Respondent then gave the Combses a check for $5,221.14 drawn on his law firm's trust account, and he told them that that payment was the first installment of $10,000, with his attorney fees and expenses subtracted.

{¶ 6} In February 2004, the Combses asked respondent about the second $10,000 installment, which was to be paid to them that month under the purported settlement agreement that they had signed. Respondent falsely told them that he was unsure when the defendant physicians' insurance company would be wiring the money to his law firm's trust account.

{¶ 7} In June 2004, the Combses contacted another attorney, who searched court records in Montgomery County and learned that respondent had never filed a lawsuit on their behalf. When that attorney confronted respondent about his actions, respondent admitted that he had failed to file a medical-malpractice case despite telling the Combses that he had done so, and he acknowledged that he had fabricated the alleged settlement agreement to avoid being sued by them for legal malpractice. Respondent also claimed that he had intended to pay the $47,500 "settlement" to the Combses from his own personal funds.

{¶ 8} In 2005, respondent did return the $1,000 that the Combses had paid him in November 2000, but the record does not reflect any additional payments to them under the purported settlement since the initial December 2003 payment.

{¶ 9} After examining these actions, the board found that respondent had violated the following Disciplinary Rules: DR 1–102(A)(4) (barring an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (barring conduct that is prejudicial to the administration of justice), 1–102(A)(6) (barring conduct that adversely reflects on a lawyer's fitness to practice law), 2–106(A) (prohibiting a lawyer from agreeing to charge or collecting an illegal or clearly excessive fee), 2–110(A)(3) (requiring a lawyer to promptly return unearned fees upon withdrawal from employment), 6–101(A)(3) (barring an attorney from neglecting an entrusted legal matter), 6–102 (barring efforts by a lawyer to exonerate himself from or limit his liability to a client for malpractice), 7–101(A)(2) (prohibiting an attorney from intentionally failing to carry out a contract of professional employment), and 9–102(A) (requiring lawyers to maintain client funds in a separate, identifiable bank account).

## Sanction

{¶ 10} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the board found that respondent had displayed a dishonest or selfish motive and had engaged in a pattern of misconduct. BCGD Proc.Reg. 10(B)(1)(b) and (c).

{¶ 11} The board also cited these mitigating factors: the absence of a prior disciplinary record, respondent's full and free disclosure to the disciplinary board, and his cooperative attitude toward the proceedings. BCGD Proc.Reg. 10(B)(2)(a) and (d). In addition, respondent submitted three letters to the board attesting to his professionalism and good character. BCGD Proc.Reg. 10(B)(2)(e).

{¶ 12} Relator recommended that respondent be suspended from the practice of law for two years, and the panel and the full board adopted that recommendation. The case is now before us on respondent's objections to the board's recommendation.

{¶ 13} We have reviewed the board's report and have also considered the written and oral arguments presented by the parties in response to that report. We accept the board's factual findings and legal conclusions, as well as its recommended sanction.

{¶ 14} The number and intricacy of respondent's lies to his clients, the three-and-a-half-year period during which he continued to mislead them, and the large number of ethical violations found by the board all justify the recommended two-year suspension. The mitigating evidence presented by respondent does not convince us that leniency is warranted, and we will not stay the suspension as he requests. Respondent engaged in a methodical pattern of dishonest conduct over many months, lying to his clients repeatedly and even covering his tracks with a fraudulent settlement document that barred the clients from discussing the "settlement" with anyone else. This conduct is unacceptable for a member of a profession in which loyalty, candor, and diligence are essential. Respondent's view that he should be permitted to continue to practice law without any period of actual suspension suggests that he does not grasp the seriousness of his misconduct and does not understand how damaging this kind of dishonesty and deception can be to our legal system.

{¶ 15} "[W]hen an attorney engages in a course of conduct that violates DR 1–102(A)(4), the attorney will be actually suspended from the practice of law for an appropriate period of time." *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 191, 658 N.E.2d 237 (imposing a six-month suspension on an attorney who falsely claimed that he had filed a paternity action for a client). In that case, the misconduct lasted for several months. In this case, a longer suspension is warranted because respondent engaged in dishonest conduct for more than three years.

{¶ 16} In *Disciplinary Counsel v. Insley*, 104 Ohio St.3d 424, 2004-Ohio-6564, 819 N.E.2d 1109, we indefinitely suspended an attorney who had fabricated a petition for the temporary custody of a minor, forged the signatures of a judge and magistrate on a falsified court order, and then lied to school officials so that the minor could remain enrolled in a particular school. A sanction more severe than the two-year suspension we are imposing in this case was warranted, because that attorney did not respond to the disciplinary complaint against her, and she had falsified the signatures of court officials. Respondent's misconduct in this case was similar, but respondent has at least cooperated in the disciplinary process and he did not forge the signatures of judges or attempt to file falsified documents in court.

{¶ 17} Another similar disciplinary case is *In re Vivas* (1999), 259 A.D.2d 153, 692 N.Y.S.2d 742. There, New York's highest court imposed a two-year suspension on an attorney who had lied to her clients in a medical-malpractice case and had presented those clients with copies of a fabricated motion and other documents purporting to be from the defendants' law firm. As respondent has done in this case, the attorney in *Vivas* cooperated during the disciplinary process and presented information about her good character. Even so, the court concluded in

*Vivas* that the attorney's fabrication of documents and false statements to her clients warranted a two-year suspension from the practice of law.

{¶ 18} Respondent insists that he should be permitted to continue to practice law so that he can show the bench and bar that his conduct was an aberration. Yet he repeatedly lied to his clients over a lengthy period of time, and he supported his lies with a falsified settlement document. He never chose the honest and honorable path on his own despite countless opportunities to do so, and we conclude that his misconduct warrants an actual suspension from the practice of law.

{¶ 19} Accordingly, respondent is hereby suspended from the practice of law in Ohio for two years. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Assistant Disciplinary Counsel, for relator.

William G. Knapp III, for respondent.