DISCIPLINARY COUNSEL *v.* MANNING.

[Cite as *Disciplinary Counsel v. Manning,*
119 Ohio St.3d 52, 2008-Ohio-3319.]

(No. 2008–0037—Submitted March 12, 2008—Decided July 8, 2008.)

**Per Curiam.**

{¶ 1} Respondent, Thomas Joel Manning of Dayton, Ohio, Attorney Registration No. 0059759, was admitted to the practice of law in Ohio in 1992. On November 22, 2006, we suspended respondent's license to practice for two years after finding that he had committed professional misconduct, including having falsely told clients that he had filed and settled their medical-malpractice claim. *Disciplinary Counsel v. Manning,* 111 Ohio St.3d 349, 2006-Ohio-5794, 856 N.E.2d 259.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we now suspend respondent's license for six months, with the suspension to commence at the end of his current two-year suspension, based on findings that he misled another client about the availability of her settlement proceeds and

then used the funds to pay his business expenses. We agree that respondent violated the Code of Professional Responsibility as found by the board and that a six-month suspension, to be served consecutively, is appropriate.

{¶ 3} Relator, Disciplinary Counsel, charged respondent in a single-count complaint with violations of five Disciplinary Rules. A panel of the board heard the case, including the parties' comprehensive stipulations, made findings of misconduct, and recommended a six-month suspension to run concurrently with respondent's current suspension and with a two-year probation period to follow. The board adopted the panel's findings of misconduct and sanction but recommended that the six-month suspension be served consecutively.

## Misconduct

{¶ 4} In April 2005, Irene Scearce retained respondent to pursue a claim for injuries she sustained when another vehicle rear-ended the vehicle in which she was a passenger. Respondent explored settlement with Allstate Insurance Company, the tortfeasor's insurer, and Hartford Insurance Company, the insurer of the other driver. In May 2006, Allstate disbursed a $12,500 settlement check, representing the policy limit, made payable to respondent and Scearce.

{¶ 5} Scearce endorsed the check, and on May 9, 2006, respondent deposited the $12,500 into his client trust account. The deposit increased the account balance from $116.05 to $12,616.05. The next day, respondent paid himself $4,166.66, his one-third share of the settlement, leaving a balance of $8,449.39 in the account. After respondent's fee, Scearce should have been paid $8,071.37, or two-thirds of the settlement ($8,333.33) less advanced expenses ($261.97).

{¶ 6} Respondent did not immediately remit his client's share of the settlement proceeds. Within days of receiving the funds, he instead transferred $1,500 from his trust account to cover an overdraft in his operating account, depleting the account to $6,949.39. Then, on May 22, 2006, respondent wrote a check to Scearce for $3,071.37, leaving just $3,878.02 in the trust account. He told Scearce that he retained $5,000 from the distribution to pay subrogation claims for medical expenses.

{¶ 7} Though respondent had anticipated that Hartford would have subrogation rights, he had actually already spent part of the money earmarked for that purpose by paying his own business expenses. Over the next few weeks, respondent depleted the rest of Scearce's money and all of his trust account by paying for personal, business, and other clients' expenses.

{¶ 8} The parties stipulated that respondent expended trust funds in the following amounts by the end of May 2006: (1) $1,000 for personal expenses, (2) a $400 check for a business bridge loan, (3) a $150 check for another client's court costs, (4) $450.64 for his malpractice insurance, and (5) $1,515 for another client's

obligation. On June 2, 2006, the trust account contained only $362.38, and one check with which respondent had tried to pay a probate court $436 was returned for insufficient funds. Respondent wrote another check from his trust account that day to pay his receptionist $280. That check also bounced.

{¶ 9} By June 6, 2006, respondent's trust account had a negative balance. Though none of the Scearce settlement money remained in trust, respondent did not then advise Scearce what had happened to her $5,000. Respondent did, however, eventually pay her that amount. In October 2006, respondent settled Scearce's claim against Hartford's insured for $60,000. He deducted $5,000 from his contingent fee and paid it to Scearce along with other distributions. In an "Itemized Statement for Personal Injury Distribution," respondent represented that he had made these disbursements:

"• Settlement Received (Hartford UIM Claim)                                    $60,000

• Waiver by Hartford of subrogation for medical payments benefits   $ 5,000

• Less 33-1/3% for attorney fees per contract of 4/14/05                    ($20,000)

• Total Disbursed to Client                                                          $45,000"

{¶ 10} The parties stipulated and the board found that respondent's misuse of his client trust account and misrepresentation to his client violated DR 1–102(A)(4) (prohibiting conduct involving fraud, dishonesty, deceit, or misrepresentation), 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), 9–102(A) (requiring a lawyer to deposit and maintain client funds, other than advances for costs and expenses, in a separate and identifiable bank account), 9–102(B)(3) (requiring a lawyer to maintain complete records of and account for client property in the lawyer's possession), and 9–102(B)(4) (requiring a lawyer to promptly pay or deliver client funds on request). We adopt these findings of misconduct.

### Sanction

{¶ 11} The parties also stipulated that respondent's cooperation in the disciplinary process and restitution weighed in favor of a lenient sanction, whereas his disciplinary record and selfish motive weighed against him. The board considered these mitigating and aggravating factors. The parties and panel recommended a six-month suspension, to run concurrently with the suspension that he is now under and to be followed by two years of probation. The board, however, recommended a six-month suspension to run consecutively.

{¶ 12} Respondent has not objected to the board's recommendation, which is consistent with the policy requiring an actual suspension for a violation of DR 1–102(A)(4). See, e.g., *Disciplinary Counsel v. Rooney*, 110 Ohio St.3d 349, 2006-Ohio-4576, 853 N.E.2d 663. We therefore suspend respondent from the practice

of law in Ohio for six months. The suspension is to commence at the conclusion of the two-year suspension period ordered in *Disciplinary Counsel v. Manning,* 111 Ohio St.3d 349, 2006-Ohio-5794, 856 N.E.2d 259, and is to be followed by two years of probation under Gov.Bar R. V(9). Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Assistant Disciplinary Counsel, for relator.

William G. Knapp III, for respondent.