CLEVELAND BAR ASSOCIATION *v.* SLAVIN.

[Cite as *Cleveland Bar Assn. v. Slavin,* 121 Ohio St.3d 618, 2009-Ohio-2015.]

*Attorney misconduct, including neglecting an entrusted legal matter and engaging in conduct involving dishonesty — One-year suspension with six months stayed.*

(No. 2008-2407 — Submitted February 4, 2009 — Decided May 6, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 07-099.

——————————

**Per Curiam**.

{¶ 1} Respondent, Jeffrey F. Slavin of Cleveland, Ohio, Attorney Registration No. 0002657, was admitted to the practice of law in Ohio in 1974. The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for one year, but conditionally stay the last six months of the suspension, based on findings that he lost a client's case by failing to file a complaint within the statute-of-limitations period and then tried to conceal the loss by telling the client that the case had been settled and paying the "settlement" himself. We accept the board's findings of professional misconduct and agree that a one-year suspension with six months stayed is appropriate.

{¶ 2} Relator, Cleveland Bar Association, charged respondent with five counts of misconduct, each alleging either a violation of the Disciplinary Rules of the former Code of Professional Responsibility or of the Rules of Professional Conduct.[1] A panel of the board heard the case, including the parties' extensive

———————

1. Relator charged respondent with misconduct under the applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Code of Professional Responsibility.

stipulations to facts and rule violations. The panel found that respondent had committed the misconduct charged in all but Count Three of the complaint, dismissed that count, and recommended the one-year suspension with six months stayed. The board adopted the panel's findings and recommendation.

**Misconduct**

{¶ 3} Respondent has been in private practice since 1980, mainly representing clients in juvenile court and domestic-relations matters, but occasionally taking personal-injury, bankruptcy, criminal, probate, collections, and landlord-tenant cases. In 2003, respondent agreed to represent Pinkie McClinton in a personal-injury action after she fell in the aisle when the bus she was riding stopped suddenly. In 2004, respondent sent McClinton's medical records and bills to the bus company. But then, as respondent admits, he neglected McClinton's case.

{¶ 4} Respondent did not file a complaint in the McClinton case until March 2006, almost three years after her accident. The Cuyahoga County Court of Common Pleas granted the bus company's motion to dismiss the action in May of that year, finding that the applicable statute-of-limitations period for the personal-injury action had expired. On appeal, respondent failed to file his brief on time, and the Eighth District Court of Appeals dismissed the case. The court of appeals later granted reconsideration, after which respondent argued that the three-year statute of limitations in Michigan, where the accident occurred, applied. On February 8, 2007, the court of appeals affirmed the trial court's judgment dismissing the action, holding that the two-year deadline set forth in R.C. 2305.10 applied.

{¶ 5} To conceal from McClinton that he had lost her case, respondent falsely told her that the parties had reached a settlement. He then gave his client a $2,500 check, drawn from his client trust account, which contained not only his clients' funds but more than $170,000 of his own money. In respondent's

2

opinion, the $2,500 represented as much as if not more than McClinton could have realistically recovered on her claim. When she expressed concern over her medical expenses from the accident, however, respondent paid McClinton $2,300 more from his client trust account to cover them.

{¶ 6} McClinton filed the underlying grievance, and an investigation ensued. In addition to his other improprieties, respondent initially lied during the investigation of the grievance, telling the investigator that he actually had settled McClinton's case. Respondent later admitted to the investigator that he had neglected his client's case and that he had lied to McClinton to conceal his neglect.

{¶ 7} Relator discovered during the investigation that respondent had impermissibly commingled his funds with those of clients by keeping his earned legal fees in his client trust account. Respondent acknowledged that he had never withdrawn these earnings from the trust account and that he had paid McClinton from these earnings. He has rectified the situation since relator's discovery, withdrawing his funds and now keeping client funds separate from his.

{¶ 8} Adopting the panel's report, the board found clear and convincing evidence that respondent had violated DR 1-102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), as charged in Count One, by failing to inform his client that her case had been dismissed. As to Count Two, the board found that respondent had violated DR 6-101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter) by failing to conscientiously pursue his client's case. The board found a violation of Prof.Cond.R. 8.4(c) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), as charged in Count Four, because of respondent's untrue statements to his client. Finally, the board found respondent in violation of Prof.Cond.R. 1.15 (requiring a lawyer to safeguard client funds by maintaining them in a separate, identifiable

bank account), as charged in Count Five, because he commingled client funds with his own.

**Sanction**

{¶ 9} In recommending a sanction for respondent's misconduct, the board considered the stipulated mitigating factors. Respondent has no prior disciplinary record, made full and free disclosure to the panel and cooperated in the disciplinary proceedings after his initial misrepresentation to the investigator, paid the client with personal funds, and established his good character and reputation apart from his misconduct in this case. See BCGD Proc.Reg. 10(B)(2)(a), (c), (d), and (e). The board also took into account that respondent was genuinely remorseful, that he has implemented office procedures to better track his clients' cases, and that he has remedied the situation with his client trust account.

{¶ 10} Aggravating features factoring into the board's decision are that respondent lied to his client and initially to relator. See BCGD Proc.Reg. 10(B)(1)(b). The board further found that respondent had acted with a selfish motive and had engaged in a pattern of misconduct. See BCGD Proc.Reg. 10(B)(1)(b) and (c).

{¶ 11} Taking into account the gravity of respondent's misconduct and the aggravating and mitigating factors of his case, the board concluded that a one-year suspension from practice with six months stayed was within the range of appropriate sanctions. Although relator cited *Disciplinary Counsel v. Manning*, 111 Ohio St.3d 349, 2006-Ohio-5794, 856 N.E.2d 259, as a case similar to this one, respondent's dishonesty to his client, his neglect of her case, and his commingling of funds did not rival the ethical breaches of Manning, who deceived his clients for three years about their case, even fabricating a settlement agreement to conceal the fact that he had never filed a lawsuit. For his deceit and

a laundry list of other Disciplinary Rule violations, we suspended Manning's license for two years.

{¶ 12} On the other hand, staying the entire one-year suspension, as we did in *Disciplinary Counsel v. Fumich*, 116 Ohio St.3d 257, 2007-Ohio-6040, 878 N.E.2d 6, and as respondent suggested we do in this case, would not be appropriate. Fumich also deceived clients into thinking that their case had been settled rather than dismissed for his inaction. And just as respondent did, Fumich paid his clients "settlement" money with personal funds, had no prior disciplinary record, expressed deep regret for his misconduct, and established his otherwise excellent character and reputation. But as the board observed, respondent's contrived response to relator's preliminary investigative inquiries distinguishes his case from *Fumich*.

{¶ 13} The board recommended a sanction more severe than that in *Fumich* but less exacting than the one in *Manning*. We accept that recommendation. Respondent is therefore suspended from the practice of law in Ohio for one year; however, the last six months of the suspension are stayed on the condition that respondent commit no further misconduct. If respondent violates the condition of the stay, the stay will be lifted, and he will serve the entire one-year suspension.

{¶ 14} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent and would suspend respondent from the practice of law in Ohio for one year but would stay the entire suspension on condition.

_____

Gallagher Sharp, Alan M. Petrov, and Monica A. Sansalone, for relator.

Richard C. Alkire Co., L.P.A., and Richard C. Alkire, for respondent.

_____