CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* GRUTTADAURIO.

[Cite as *Cleveland Metro. Bar Assn. v. Gruttadaurio,* 136 Ohio St.3d 283,

2013-Ohio-3662.]

*Attorneys—Misconduct—Failure to act with reasonable diligence—Failure to place fees into client trust account—Failure to refund unearned fees—Failure to perform contracted work—Engaging in conduct that adversely reflects on lawyer's fitness to practice law—Knowingly making false statements during disciplinary proceedings—Indefinite suspension.*

(No. 2012-2060—Submitted February 6, 2013—Decided August 28, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 11-114.

_____

**Per Curiam**.

{¶ 1} Respondent, John Joseph Gruttadaurio of Chagrin Falls, Ohio, Attorney Registration No. 0042083, was admitted to the practice of law in Ohio in 1989.

{¶ 2} In December 2011, a probable-cause panel of the Board of Commissioners on Grievances and Discipline certified a nine-count complaint filed by relator, Cleveland Metropolitan Bar Association, alleging that Gruttadaurio failed to place client fees received pursuant to a flat-fee arrangement into a client trust account, failed to refund unearned client payments, failed to advise his clients that he did not carry malpractice insurance, failed to perform contracted work, and lied to relator's investigator. Relator further alleged that Gruttadaurio engaged in dishonesty, fraud, deceit, or misrepresentation, that his conduct was prejudicial to the administration of justice, and that it adversely reflected on his fitness to practice law.

**{¶ 3}** The panel found that Gruttadaurio committed most of the charged misconduct but recommended that alleged violations of Prof.Cond.R. 8.1(a) (prohibiting knowingly making a false statement of material fact in connection with a disciplinary matter) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) contained in Count Three of relator's complaint be dismissed. Based in large part on its view that these two serious alleged violations were not proven, the panel recommended that Gruttadaurio be suspended from the practice of law for two years with the final 18 months of that suspension stayed on conditions. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. Neither party has filed objections to the board's report.

**{¶ 4}** We adopt the board's findings of fact and misconduct, but having thoroughly reviewed the record, we find, contrary to the board, that relator has proven by clear and convincing evidence that Gruttadaurio engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and knowingly made a false statement of material fact to relator's investigator during the course of the disciplinary investigation as alleged in Count Three of relator's complaint. Therefore, we find that Gruttadaurio has violated Prof.Cond.R. 8.1(a) and 8.4(c) as charged in that count, reject the board's recommended sanction, and indefinitely suspend Gruttadaurio from the practice of law in Ohio.

## Misconduct

### *The Aldo Britta Matter—Counts One, Five, and Six*

**{¶ 5}** Aldo Britta was convicted in 2008 of four counts of gross sexual imposition and sentenced to eight years in prison. An attorney with the Lake County public defender's office filed an appellate brief in the Eleventh District Court of Appeals on his behalf on July 6, 2009. In June or July 2009, Britta and his mother, Luigia Britta, retained Gruttadaurio to represent Britta in his appeal in the Eleventh District and, if necessary, in an appeal to the Supreme Court of Ohio.

**{¶ 6}** In a written engagement letter dated July 23, 2009, Gruttadaurio agreed to assume representation in Britta's appeal by filing a notice of substitution of counsel, filing a reply brief (if one was necessary), and presenting oral argument. But he did not notify Britta's public defender that he had been retained or file a notice of substitution of counsel in the case. Although Gruttadaurio attended the oral argument of Britta's appeal on January 12, 2010, he sat in the gallery while the public defender argued the case.

**{¶ 7}** The engagement letter that Gruttadaurio had provided to Aldo Britta stated that he would provide legal representation pro bono, but that Britta would be responsible for the costs of the litigation. Despite the terms of that agreement, and prior to its execution, Gruttadaurio quoted Luigia Britta a flat fee of $4,000, which she paid in monthly installments over a ten-month period.

**{¶ 8}** On March 15, 2010, the Eleventh District Court of Appeals affirmed Britta's convictions. *State v. Britta*, 11th Dist. Lake No. 2009-L-017, 2010-Ohio-971, 2010 WL 891357. Notwithstanding Gruttadaurio's representations to Luigia Britta that he would appeal that judgment to this court, he failed to timely file a notice of appeal and memorandum in support of jurisdiction on Britta's behalf. On July 6, 2010, attorney Ken Bossin, who by that time had been retained to represent Britta, moved this court for leave to file a delayed appeal. Although we granted the motion for leave, 126 Ohio St.3d 1543, 2010-Ohio-3855, 932 N.E.2d 338, we subsequently declined to accept jurisdiction over the case. 127 Ohio St.3d 1484, 2010-Ohio-6371, 939 N.E.2d 183.

**{¶ 9}** From the time that Luigia Britta retained Gruttadaurio until the deadline for initiating Britta's appeal in this court, she made multiple efforts to reach Gruttadaurio to discuss the case. Gruttadaurio often failed to answer or return her telephone calls, and her letters to him were returned unclaimed.

**{¶ 10}** Gruttadaurio did not inform either of the Brittas that he had failed to timely file an appeal to this court. And despite having failed to assume

representation in Britta's appeal in the Eleventh District and having failed to file a timely appeal in this court, Gruttadaurio did not refund any of the fees that he had collected.

{¶ 11} The parties stipulated and the board found that Gruttadaurio violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client) as charged in Count One and Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter) as charged in Count Six. The board also found that by accepting payment for services he did not perform and failing to refund any of Luigia Britta's payments, Gruttadaurio violated Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee) as charged in Count Five. We adopt these findings of fact and misconduct.

*The Elizabeth Leroy Matter—Count Two*

{¶ 12} During the pendency of Britta's appeal in the Eleventh District Court of Appeals, Luigia Britta retained Gruttadaurio to represent her daughter, Elizabeth Leroy, in a domestic-relations matter. He filed the complaint, appeared for at least one pretrial conference, and drafted settlement paperwork, but he failed to appear at the final hearing. The parties stipulated and the board found that by failing to attend the final hearing, Gruttadaurio violated Prof.Cond.R. 1.3 as charged in Count Two.

{¶ 13} We adopt these findings of fact and misconduct and also find that Gruttadaurio agreed to represent Leroy and to complete all the briefing in Britta's appeal to this court for an additional combined fee of $1,000. Gruttadaurio received the $1,000 payment shortly after that agreement was reached.

*Failure to Inform Clients Regarding Lack of*
*Malpractice Insurance—Counts Four and Eight*

{¶ 14} When he opened his solo practice in 2009, Gruttadaurio began to research the cost of malpractice insurance. In his engagement letters at that time,

he advised clients that he was "in the process" of applying for legal-malpractice insurance, but he failed to advise those clients later that he had discontinued his efforts to obtain insurance when it became clear to him that he could not afford it. Moreover, he never advised the Brittas that he did not carry malpractice insurance. The parties stipulated and the board found that this conduct violated Prof.Cond.R. 8.4(c) and 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional-liability insurance) as charged in Counts Four and Eight of relator's complaint. We adopt these conclusions.

*Client-Trust-Account Violations Involving Britta's Fee—Count Seven*

{¶ 15} Gruttadaurio did not maintain a client trust account during the time that he represented Britta. Gruttadaurio's testimony at the disciplinary hearing establishes that he deposited the funds he had received from Luigia Britta into his business and personal bank accounts. The board found that his conduct regarding those funds violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property) as charged in Count Seven.

{¶ 16} We adopt the board's findings of fact as to Count Seven. For the reasons that follow, we, like the board, do not accept Gruttadaurio's explanation justifying his handling of these funds. Gruttadaurio claimed at the disciplinary hearing that he applied the payments to work that he had already performed on Britta's behalf, but he did not maintain records of the hours spent on the case or the tasks he performed—information that only he could know.

{¶ 17} In his March 8, 2011 response to relator's letter of inquiry, Gruttadaurio acknowledged that his written agreement with Britta required him to take over Britta's representation in the Eleventh District Court of Appeals and to present oral argument before that court. He also acknowledged that he had agreed to handle that representation for a flat fee of $4,000. But Gruttadaurio stated in that response that because the Public Defender's Office was handling the appeal

effectively and had more experience with the judges on the appellate panel, he decided to allow the public defender to complete the appeal. Although he claimed to have advised the Brittas of his decision, Luigia Britta testified that she did not recall such a conversation.

{¶ 18} In his response letter to relator, Gruttadaurio admitted that he had not performed all the promised work, but also claimed that he was entitled to keep the entire $4,000 flat fee based on his assertions that he had performed approximately 70 hours of work on the case and that had he billed the case hourly, "[it] would have been far more costly than the fee paid." But the key flaw in Gruttadaurio's position is that he did not accept the representation on an hourly fee basis—he agreed to a flat fee for the work and then he did not complete it. Therefore, he could not have been entitled to retain the entire flat fee.

{¶ 19} We acknowledge that when representation is undertaken pursuant to an hourly fee agreement, if the value of the work the attorney has already performed exceeds the amount of a client's installment payment, the money received should not be deposited into the attorney's client trust account. This is inherently true because at the time such a payment is remitted, it has already been earned and rightfully belongs to the attorney.

{¶ 20} Flat-fee representation, however, is distinguishable from representation pursuant to an hourly fee arrangement. Comment 6A to Prof.Cond.R. 1.5 explains that a flat fee "is a fee of a set amount for performance of agreed work, which may or may not be paid in advance but is not deemed earned until the work is performed." The comment further states, "An earned upon receipt fee is a flat fee paid in advance that is deemed earned upon payment regardless of the amount of future work performed. When a fee is earned affects whether it must be placed in the attorney's trust account, see Rule 1.15, and may have significance under other laws such as tax and bankruptcy."

**{¶ 21}** While the Rules of Professional Conduct permit an attorney to deem a fee earned upon receipt, Prof.Cond.R. 1.5(d)(3) prohibits an attorney from entering into an arrangement for, charging, or collecting fees that are "earned upon receipt," "nonrefundable," or similarly designated "unless the client is simultaneously advised in writing that if the lawyer does not complete the representation for any reason, the client may be entitled to a refund of all or part of the fee based upon the value of the representation pursuant to division (a) of this rule." Otherwise, Prof.Cond.R. 1.15(c) provides: "A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."

**{¶ 22}** As we stated in *Disciplinary Counsel v. Summers*, 131 Ohio St.3d 467, 2012-Ohio-1144, 967 N.E.2d 183, ¶ 18:

> When a lawyer agrees to represent a client through the conclusion of the case for a flat fee, and that lawyer withdraws from representation without cause before the work is completed, he cannot retain the entire flat fee by resorting to a mathematical calculation of his billable hours. To hold otherwise would leave clients at the mercy of lawyers who charge significant flat fees to provide complete representation only to withdraw when the demands of the case become too onerous. While we recognize that [the attorney] is entitled to be compensated for the services he has provided, [the clients] are also entitled to receive a benefit for their flat-fee bargain.

**{¶ 23}** Here, there is no evidence that Gruttadaurio advised either Luigia Britta or Aldo Britta in writing that they would be entitled to a refund of all or

part of the fee if he did not complete Britta's representation. While Gruttadaurio may have been entitled to collect part of the flat fee based on the work he had already performed, the record shows that he clearly did not complete all the services that were necessary to earn the entire flat fee. In fact, Gruttadaurio admitted that he failed to enter an appearance in the court of appeals, that he failed to orally argue the case before the court of appeals, and that the notice of appeal and memorandum in support of jurisdiction that he prepared for Britta were never filed in this court. Therefore, we adopt the board's finding that Gruttadaurio violated Prof.Cond.R. 1.15(a) by failing to place any portion of Britta's flat fee into a client trust account.

*Conduct Adversely Reflecting on Gruttadaurio's*

*Fitness to Practice Law—Count Nine*

{¶ 24} In Count Nine of the complaint, relator alleged that Gruttadaurio's conduct with respect to Counts One through Eight violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). The parties stipulated that his conduct with respect to all those counts, with the exception of Counts Three, Five, and Seven, violated Prof.Cond.R. 8.4(h) as charged. The board found that Gruttadaurio's conduct with respect to all those counts, with the exception of Count Three, violated Prof.Cond.R. 8.4(h). We agree that multiple violations of Prof.Cond.R. 8.4(h) were proven.

*Misrepresentations to Relator's Investigator about*

*the Britta Matter—Count Three*

{¶ 25} In Count Three of the complaint, relator alleged that Gruttadaurio violated Prof.Cond.R. 8.1(a) and 8.4(c) by falsely advising relator's investigator that he had mailed Britta's notice of appeal and memorandum in support of jurisdiction to this court and had served them on the prosecuting attorney by regular United States mail, when Gruttadaurio knew that he had not done so.

Relator further alleged that by failing to mail the documents to this court, Gruttadaurio delayed Britta's appeal to this court, thereby violating Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

{¶ 26} The board found that in the course of the disciplinary investigation, Gruttadaurio stated that he had prepared and mailed Britta's notice of appeal and memorandum in support of jurisdiction to this court on or about April 21, 2010, by regular United States mail, and also stated that he had mailed copies of the documents to the prosecutor. The board also found that Gruttadaurio stated to the investigator that he had called this court "on a couple of occasions" and was informed that the documents were "in the system," but that they were not yet on the docket, and was informed that this circumstance "was not unusual."

{¶ 27} The board found that at a second meeting with the investigator, however, Gruttadaurio stated that "he may not have called" this court to follow up on the filings as he had previously represented. Gruttadaurio also produced a ledger during the second meeting that referred to a payment to this court and stated that his first indication that the documents might not have been received by this court was when he discovered that the check for the filing fee had not cleared his account.

{¶ 28} As alleged in the complaint, the board found that the documents were not received by this court or by the prosecuting attorney in Britta's case and that the United States Postal Service had not returned the documents to Gruttadaurio.

{¶ 29} Relator offered into evidence the cover letter, notice of appeal, and memorandum in support of jurisdiction that Gruttadaurio claimed to have timely mailed, and Gruttadaurio testified, "I prepared them for mailing. What happened after that, I honestly don't know." This testimony, however, even if it was

accurate, does not insulate from scrutiny certain other statements made by Gruttadaurio that are highly problematic.

{¶ 30} The board concluded that Gruttadaurio's conduct in this matter was prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d). Citing insufficiency of the evidence, however, the board recommends that the claimed violations of Prof.Cond.R. 8.1(a) and 8.4(c) arising out of Gruttadaurio's allegedly false statements to relator's investigator be dismissed.

{¶ 31} In attorney-discipline matters, "[t]he Supreme Court is not bound by the conclusion of either the panel or the board regarding the facts or law when determining the propriety of an attorney's conduct and the appropriate sanction." *Disciplinary Counsel v. Furth*, 93 Ohio St.3d 173, 181, 754 N.E.2d 219 (2001), citing *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 330, 708 N.E.2d 193 (1999). Nonetheless, we typically defer to the factual findings of the panel and board unless the record weighs heavily against those determinations. *Disciplinary Counsel v. Heiland*, 116 Ohio St.3d 521, 2008-Ohio-91, 880 N.E.2d 467, ¶ 39, citing *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8. Having independently reviewed the record in this case, we cannot agree with the board's recommendation to dismiss the alleged violations of Prof.Cond.R. 8.1(a) and 8.4(c).

{¶ 32} Gruttadaurio admitted at the disciplinary hearing that he had initially told relator's investigator, Howard Mishkind, that he had timely mailed the Britta appeal documents to this court via regular United States Mail. He also advised Mishkind the first time they met that he had made one or two calls to the clerk of this court to check on the status of the filing. He met with Mishkind a second time within about a week of the first meeting, however, and reported that he could not find any telephone records to confirm that he had called the Supreme Court of Ohio to check the status of the filing. At that time, he acknowledged that he might not have placed such a call.

**{¶ 33}** At the disciplinary hearing, Gruttadaurio testified that he had prepared the documents and put them in the envelopes, but that he did not know what happened after that. He then attempted to explain his initial false statement to Mishkind, stating:

> Quite frankly, given everything that had happened, I honestly believe that I sort of—not sort of—blurred what happened, what I knew should have happened. And I—I think, sitting there in the moment with Mr. Mishkind, I made what I believed, in my mind, to be an accurate statement; and replaying it as he left and as I went back over my records, I realized that it was in error. And that's all.

**{¶ 34}** Thus Gruttadaurio claims that he made the false representations regarding both the mailing of the documents and the calls to this court when put on the spot in his first meeting with relator's investigator. He contends that he believed those statements to be true when he made them, and he represents that further investigation caused him to realize his "error."

**{¶ 35}** Gruttadaurio's explanation might be credible if his statement to relator's investigator was his first claim that he had mailed Britta's notice of appeal. But he first made those representations in a March 8, 2011 letter to relator—a letter that according to his own testimony was sent two to three months before he first met with Mishkind. In that letter, Gruttadaurio stated:

> As I expected, I didn't have much of a problem fashioning the necessary paperwork to file, so due to other obligations I decided to mail the filing package to the Court. I did so with a week to

spare before my deadline, but unfortunately in an ill-advised fit of economy, I sent it regular mail.

At this point, there is no sense in stating anything other than that I dropped the ball. I called the Court once to confirm the filing, but they told me that it was not in the system, but given the timing was probably in process. After that, the matter moved to waiting for a scheduling order, and I did not notice that there was a problem until a few months down the road when I realized that my check for the filing fee had not cleared.

**{¶ 36}** Gruttadaurio made this statement in a four-page, single-spaced letter, in which he first apologized for his delay in responding to relator's inquiry, stating, "While it took [me] longer than I had hoped to track down elements of my files due to changes in my computing equipment, I should have contacted you for a time extension." Thus, contrary to his claim that he blurred what *should have* happened with what *did* happen in the heat of the moment during his first meeting with relator's investigator, it is evident that he had already engaged in careful reflection and review of his records before he made the false representations in his earlier letter to relator. Although Gruttadaurio testified that he had no difficulties with his memory or cognition, his recall of the events surrounding the alleged mailing became conveniently less clear when he realized that relator's investigation was not going away.

**{¶ 37}** Gruttadaurio's representations that he had called this court to inquire about the alleged filing of Britta's documents further demonstrate that he knew his statements were false when he made them. While he claimed to have made at least one such call in both his March 8, 2010 letter and in his first interview with relator's investigator—even going so far as to relate what a court employee supposedly told him about the status of the case—he later

12

acknowledged to the investigator that he might not have made such a call. And when asked at the disciplinary hearing whether he had ever placed a call to this court's clerk's office to check on the status of the filing, he completed his backpedaling and testified, "I don't believe so, no."

**{¶ 38}** Our review of Gruttadaurio's testimony shows that it is not plausible that he could have made a call to this court regarding another case and misremembered that call as related to Britta's appeal. He testified at the disciplinary hearing that he had filed only two previous cases in this court—both during his previous tenure with a large firm where the legal assistants handled the filing of court documents. One would reasonably expect an attorney with no cognitive deficits to recall details of his rare interactions with this court— particularly when, as here, he was concerned about whether his client's appeal documents had been timely received by the court. We find that Gruttadaurio's claims that he neither intentionally failed to cooperate nor attempted to hide what had happened ring false and are belied by the record.

**{¶ 39}** Thus, despite the board's findings to the contrary, we find that in addition to establishing a violation of Prof.Cond.R. 8.4(d) regarding Count Three of the complaint, relator has proven by clear and convincing evidence that Gruttadaurio also knowingly made false statements of material fact in the course of a disciplinary investigation and thereby engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Prof.Cond.R. 8.1(a) and 8.4(c) as charged in Count Three.

### Sanction

**{¶ 40}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors

listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 41}** The board found that four of the aggravating factors identified in BCGD Proc.Reg. 10(B)(1) are present—a pattern of neglect, multiple offenses, failure to fully acknowledge the wrongful nature of the misconduct, and failure to make timely restitution. *See* BCGD Proc.Reg. 10(B)(1)(c), (d), (g), and (i). As mitigating factors, the board cites the absence of a prior disciplinary record, the absence of a dishonest or selfish motive, and a cooperative attitude toward the disciplinary proceedings. *See* BCGD Proc.Reg. 10(B)(2)(a), (b), and (d).

**{¶ 42}** Relator argued at the disciplinary hearing that Gruttadaurio's misconduct warrants a two-year actual suspension from the practice of law. In support of that sanction, relator cited our decisions in *Disciplinary Counsel v. Manning*, 111 Ohio St.3d 349, 2006-Ohio-5794, 856 N.E.2d 259 (imposing a two-year actual suspension on an attorney who had accepted money from clients, deposited it into his law firm's operating account, failed to perform the contracted work, falsely advised the clients that he had filed a malpractice action on their behalf, and fabricated a settlement agreement to avoid being sued by the clients for malpractice), and *Cincinnati Bar Assn. v. Larson*, 124 Ohio St.3d 249, 2009-Ohio-6766, 921 N.E.2d 618 (imposing a two-year suspension with the second year stayed on conditions on an attorney who had failed to perform his duties as counsel for three clients, failed to return their unearned fees, misled one of those clients about the status of her driver's license suspension and other traffic citations, and failed to cooperate in two of the disciplinary investigations; mitigating factors included the absence of a prior disciplinary record, a debilitating sleep disorder that compromised the attorney's energy level and focus, and letters from three judges attesting to the attorney's good character and competence).

{¶ 43} Gruttadaurio argued in favor of a suspension for a definite term, fully or at least partially stayed on the conditions that he attend courses in law-office management, make restitution to Luigia Britta, and have a mentor oversee his office practices.

{¶ 44} Citing Gruttadaurio's "genuine remorse" and his "efforts to improve the management of his practice," the board found that his penalty "should not be as severe as the sanctions imposed in *Manning* or *Larson*." Therefore, the board recommends that Gruttadaurio be suspended for two years with the final 18 months stayed on the conditions that he be required to certify to the Supreme Court that he has completed six hours of continuing legal education ("CLE") in law-office management and has made restitution of $4,000 to Luigia Britta. Additionally, the board recommends that he be required to serve a two-year period of monitored probation upon his return to the active practice of law.

{¶ 45} While Gruttadaurio may have shown some remorse for his stipulated misconduct, it was more than outweighed by his failure to acknowledge the wrongful nature of what are arguably his most egregious acts—his claims that he earned the entire flat fee he collected in the Britta matter and his false statements to relator's investigators that he had mailed Britta's appeal documents when he knew that he had not done so. Moreover, our review of the record shows only that Gruttadaurio is *willing* to participate in CLE and to work with a mentor to improve his practice—not that he has actually engaged in such efforts. Therefore, we cannot in good conscience consider Gruttadaurio's claimed remorse, his alleged cooperation in the disciplinary proceeding, or his alleged efforts to improve the management of his practice as mitigating factors weighing in favor of a lesser sanction.

{¶ 46} We find that like Manning and Larson, Gruttadaurio accepted money from his clients and failed to perform the promised work. While Gruttadaurio did not affirmatively misrepresent to his clients the status of their

cases for extended periods of time as Manning and Larson did, he deceived his clients by advising them that he was in the process of obtaining malpractice insurance and failing to advise them that he later decided that he could not afford such coverage. He also failed to reasonably communicate with his clients given that he did not respond to Leroy's calls about her final divorce hearing and stopped answering Luigia Britta's calls following the deadline for filing Britta's appeal with this court, conceding that he was "scared to death" that he had screwed up.

{¶ 47} Throughout the disciplinary proceedings, Gruttadaurio refused to acknowledge the wrongful nature of his conduct with respect to some of his most egregious acts—his handling of the flat fees and his false statements in the course of the disciplinary proceedings. He maintained that he was not required to deposit Luigia Britta's payments into a client trust account because, in his opinion, he had already earned the money—even though he had not completed all the promised tasks. He ultimately conceded that Britta's notice of appeal and memorandum in support of jurisdiction were not filed in this court, admittedly rendering his representation "valueless" to Britta. Finally, his self-serving statements and misrepresentations in the course of the disciplinary proceedings are indicative of a calculated attempt to avoid accepting responsibility for his deficient representation.

{¶ 48} We have recognized that the act of accepting retainers or legal fees and failing to carry out contracts of employment is tantamount to theft of the fee from the client and that the presumptive sanction for that offense is disbarment. *See, e.g.*, *Columbus Bar Assn. v. Moushey*, 104 Ohio St.3d 427, 2004-Ohio-6897, 819 N.E.2d 1112, ¶ 16, citing *Disciplinary Counsel v. Sigall*, 14 Ohio St.3d 15, 17, 470 N.E.2d 886 (1984), and *Disciplinary Counsel v. France*, 97 Ohio St.3d 240, 2002-Ohio-5945, 778 N.E.2d 573, ¶ 11. That presumption, however, may be tempered with sufficient mitigating evidence, which may include a substantial

period of legal practice with no prior disciplinary offenses. *See, e.g., Disciplinary Counsel v. Smith*, 101 Ohio St.3d 27, 2003-Ohio-6623, 800 N.E.2d 1129, ¶ 9 (attorney who had been licensed for approximately 45 years without any previous ethical infraction indefinitely suspended for misappropriating client funds). In this case, Gruttadaurio practiced law for 30 years without incident before committing the charged misconduct.

{¶ 49} We have also explained: "A lawyer who engages in a material misrepresentation to a court * * * violates, at a minimum, the lawyer's oath of office that he or she will not 'knowingly * * * employ or countenance any * * * deception, falsehood, or fraud.' " *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190, 658 N.E.2d 237 (1995), quoting former Gov.Bar R. I(8)(A).

{¶ 50} Because we have found that Gruttadaurio has engaged in dishonesty not only in his handling of his client matters but also in the disciplinary proceedings before this court, we find that his conduct is most analogous to those attorneys who have taken their clients' money, failed to perform the promised legal work, and then failed to cooperate in the resulting disciplinary investigation. We have repeatedly held that such misconduct warrants an indefinite suspension from the practice of law. *See Disciplinary Counsel v. Mathewson*, 113 Ohio St.3d 365, 2007-Ohio-2076, 865 N.E.2d 891, ¶ 19 (attorney indefinitely suspended for neglecting clients' cases, mismanaging his client trust account, and failing to cooperate throughout the disciplinary process); *Cleveland Bar Assn. v. Verbiski*, 86 Ohio St.3d 627, 628, 716 N.E.2d 702 (1999) (attorney indefinitely suspended for failure to seek the lawful objectives of her client, failure to timely refund an unearned retainer, and failure to cooperate in the ensuing disciplinary investigation).

{¶ 51} Accordingly, John Joseph Gruttadaurio is indefinitely suspended from the practice of law in Ohio. Costs are taxed to Gruttadaurio.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER and O'NEILL, JJ., dissent and would impose a two-year suspension with 18 months stayed on conditions as recommended by the board.

_____

Heather M. Zirke, Assistant Bar Counsel; Bolek Besser Glesius, L.L.C., and Cathleen M. Bolek; and Dunson & Dunson Co., L.P.A., and Joseph P. Dunson, for relator.

John Joseph Gruttadaurio, pro se.

_____