[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Pigott,* Slip Opinion No. 2018-Ohio-5096.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-5096

DISCIPLINARY COUNSEL *v.* PIGOTT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Pigott,* Slip Opinion No. 2018-Ohio-5096.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to obtain clients' written consent to contingent-fee agreements, failing to promptly deliver funds to clients, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Six-month suspension.*

(No. 2018-0815—Submitted July 18, 2018—Decided December 20, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-054.

_____

**Per Curiam.**

{¶ 1} Respondent, Thomas Daniel Pigott, of Toledo, Ohio, Attorney Registration No. 0062919, was admitted to the practice of law in Ohio in 1994. We

suspended Pigott's license to practice law for four days in December 2005 for his failure to register as an attorney for the 2005 to 2007 biennium. *In re Attorney Registration Suspension of Pigott*, 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671; *In re Reinstatement of Pigott*, 107 Ohio St.3d 1705, 2006-Ohio-13, 840 N.E.2d 209.

{¶ 2} In an October 27, 2017 complaint, relator, disciplinary counsel, charged Pigott with multiple acts of misconduct arising from his failure to enter into written contingent-fee agreements with two of his clients, failure to have those clients sign closing statements before Pigott withdrew his earned fees from his client trust account, failure to promptly disburse funds to those clients, and misappropriation of those funds for his own use. The parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors and agreed that the appropriate sanction for that misconduct is a six-month suspension from the practice of law. After considering those stipulations and the evidence presented at a hearing before a panel of the Board of Professional Conduct, the board agreed that Pigott had engaged in the charged misconduct and recommended that we adopt the parties' stipulated sanction.

{¶ 3} Based on our independent review of the record and our precedent, we adopt the board's findings of fact and conclusions of law and suspend Pigott from the practice of law for six months.

**Misconduct**

*Representation of Private Wealth Consultants*

{¶ 4} In 2011 and early 2012, Pigott represented Private Wealth Consultants ("PWC") in a civil matter against Derick Gant and Gant Investment Advisors, L.L.C. (collectively "Gant"). In January 2012, PWC and Gant entered into a settlement agreement in which Gant agreed to pay PWC $28,000 in installments of $10,000 by January 6, 2012, and $500 each month thereafter until

the settlement was paid in full. Pursuant to the agreement, Gant was to remit all payments to Pigott.

{¶ 5} PWC agreed to pay Pigott 50 percent of any proceeds that he collected from Gant, but Pigott did not reduce the fee agreement to writing as required by Prof.Cond.R. 1.5(c)(1) (requiring a lawyer to set forth a contingent-fee agreement in a writing signed by both the client and the lawyer). From January 6, 2012, through April 8, 2013, Pigott collected $17,000 from Gant. He deposited those funds into his client trust account and distributed $8,500 to PWC in five installments. During that same period of time, he also withdrew his earned fees regarding the PWC matter, but he did not have PWC sign a closing statement as required by Prof.Cond.R. 1.5(c)(2) (requiring a lawyer entitled to compensation under a contingent-fee agreement to prepare a closing statement to be signed by the lawyer and the client at the time of or prior to receipt of compensation under the agreement, detailing the calculation of the lawyer's compensation and any costs and expenses deducted from the judgment or settlement).

{¶ 6} From April 2013 through December 2014, Pigott collected an additional $10,500 from Gant and deposited the funds into his client trust account. He did not, however, remit any of those funds to PWC. And on the few occasions that PWC inquired about the status of the settlement, Pigott replied that he would "settle up" with the company at a later date. But instead of maintaining those funds in his client trust account, Pigott withdrew his earned fees without having PWC approve a closing statement and then misappropriated the remaining funds by writing multiple checks to himself, his firm, and his wife for personal and business expenses. On July 18, 2016, he still owed PWC $5,250, but his client trust account held just $89.93.

{¶ 7} In February and March 2017, Pigott continued to deposit earned fees and client funds into his client trust account. During the same time period, he issued a $500 check to his wife from the account, checks totaling $9,000 to his firm, and

a check for $3,250 to PWC. But when Pigott issued a $4,150 check from the account on behalf of a different client, it was twice returned for insufficient funds. He subsequently deposited personal funds into the account and purchased a certified check to replace the client-trust-account check that had been returned. Relator commenced its investigation after receiving a bank notice regarding the overdraft of Pigott's client trust account.

{¶ 8} Pigott paid the remaining $2,000 that he owed to PWC on November 17, 2017, and no further restitution is owed to the company.

*Representation of Robert Falk*

{¶ 9} On January 31, 2007, the Lucas County Court of Common Pleas issued a default judgment for $124,393.96 in favor of Robert Falk in a civil matter. Having represented Falk in the litigation, Pigott agreed to help Falk collect the judgment through wage garnishment in exchange for one-third of any proceeds collected. Pigott, however, did not reduce that fee agreement to writing.

{¶ 10} Beginning on September 23, 2013, and approximately every two weeks thereafter until August 7, 2017, Pigott received a garnishment payment from the judgment debtor's employer. Pigott notified Falk of the payments, but he did not disburse any portion of the proceeds to him. And on the few occasions that Falk inquired about the status of the payments, Pigott promised that he would "settle up" at a later date.

{¶ 11} Although Pigott deposited the garnishment payments into his client trust account, he withdrew his earned fee without having Falk sign a closing statement. He also misappropriated Falk's share of the payments by writing multiple checks to himself, his firm, and his wife for personal and business expenses. He should have held $2,731.21 in trust for Falk on March 30, 2015, but his client-trust-account balance was just $1,488.33—and by March 6, 2017, it was overdrawn.

**{¶ 12}** By August 7, 2017, Pigott had collected $6,640.47, at least $4,426.98 of which belonged to Falk. He paid that amount to Falk in November 2017. Since then, Pigott has entered into a written contingent-fee agreement with Falk and continues to receive garnishment payments on Falk's behalf. He now disburses those funds in a timely manner and has Falk sign a closing statement that states the details of the disbursements.

*Rule Violations*

**{¶ 13}** The parties stipulated and the board found that Pigott's conduct with regard to PWC and Falk violated Prof.Cond.R. 1.5(c)(1), 1.5(c)(2), 1.15(b) (prohibiting a lawyer from depositing his or her own funds in a client trust account except to pay or obtain a waiver of bank service charges), 1.15(d) (requiring a lawyer to promptly deliver funds that a client is entitled to receive unless otherwise agreed to in writing by the client), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

**Sanction**

**{¶ 14}** When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases. Because each disciplinary case is unique, however, we may take all the relevant factors into account when determining which sanction to impose in any particular case. *Columbus Bar Assn. v. Watson*, 144 Ohio St.3d 317, 2015-Ohio-4613, 42 N.E.3d 752, ¶ 7.

**{¶ 15}** At the panel hearing, Pigott testified that in 2012, a medical condition left him unable to work on a regular basis for at least six months, which caused his income to decrease significantly. He had no disability insurance, his wife did not work outside of their home, and they had children in school. Around that time, he stopped making disbursements to PWC and Falk and began to use his clients' funds to cover family bills. Several checks were returned for insufficient

funds and Pigott overdrew his client trust account in the midst of additional family stress in early 2017.

{¶ 16} Pigott notified PWC Chief Executive Officer Gary Rathbun and Falk—both of whom were long-term clients and friends—of his misconduct and made restitution to them. Both men submitted letters acknowledging that they had received restitution and indicating not only that they forgave Pigott for his misconduct but that they continue to trust him with their personal legal matters and would not hesitate to recommend him to others in need of legal services.

{¶ 17} As aggravating factors, the parties stipulated and the board found that Pigott had a brief attorney-registration suspension, acted with a dishonest or selfish motive, engaged in a pattern of misconduct, and committed multiple offenses. *See* Gov.Bar R. V(13)(B)(1) through (4). The board adopted the parties' stipulated mitigating factors, which include Pigott's timely, good-faith effort to make restitution and rectify the consequences of his misconduct; his full and free disclosure to the board and cooperative attitude toward the proceedings; and evidence of his good character and reputation as demonstrated by the letters from Rathbun and Falk, six fellow attorneys, and the Assistant Chief Magistrate of the Lucas County Probate Court. *See* Gov.Bar R. V(13)(C)(3), (4), and (5).

{¶ 18} Based on the significant mitigating factors present, the parties stipulated and the board found that a six-month suspension from the practice of law is the appropriate sanction for Pigott's misconduct. In support of that recommendation, the parties and the board cited several cases in which we imposed suspensions ranging from six months to two years with 18 months stayed on conditions for conduct comparable to that engaged in by Pigott. *See, e.g.*, *Disciplinary Counsel v. Manning*, 119 Ohio St.3d 52, 2008-Ohio-3319, 891 N.E.2d 743 (imposing a six-month suspension on an attorney who made misleading statements about the availability of a client's settlement proceeds, failed to deposit and maintain client funds in a separate client trust account, failed to maintain

complete records of client funds in his possession, and used client funds to pay personal and business expenses); *Dayton Bar Assn. v. Gerren*, 103 Ohio St.3d 21, 2004-Ohio-4110, 812 N.E.2d 1280 (imposing a six-month suspension on an attorney who misappropriated settlement proceeds that he had reserved to satisfy a client's outstanding medical bill); *Disciplinary Counsel v. Bubna*, 116 Ohio St.3d 294, 2007-Ohio-6436, 878 N.E.2d 632 (imposing a one-year suspension with six months conditionally stayed on an attorney who deposited his personal funds in his client trust account to avoid garnishment, used client funds for his own purposes, and overdrew the account on multiple occasions); and *Disciplinary Counsel v. Johnson*, 131 Ohio St.3d 372, 2012-Ohio-1284, 965 N.E.2d 294 (imposing a two-year suspension with 18 months conditionally stayed on an attorney who commingled personal and client funds in his client trust account, used client funds for his own purposes, and failed to cooperate in the resulting disciplinary investigation).

**{¶ 19}** Having independently reviewed the record and the cases cited by the parties and the board, we agree that Pigott's conduct is most comparable to that of the attorneys in *Manning* and *Gerren*. In light of Pigott's acceptance of full responsibility for his misconduct, his payment of restitution, the corrective actions that he has taken to utilize proper contingent-fee agreements and settlement-disbursement sheets going forward, and the evidence of his good character and reputation, we agree that a six-month suspension is the appropriate sanction for Pigott's misconduct.

**{¶ 20}** Accordingly, Thomas Daniel Pigott is suspended from the practice of law in Ohio for six months. Costs are taxed to Pigott.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, DEWINE, and DEGENARO, JJ., concur.

_____

Scott J. Drexel, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Goranson, Parker & Bella Co., L.P.A., and Christopher F. Parker, for respondent.

————————————