**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. Donchatz,* **Slip Opinion No. 2017-Ohio-2793.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-2793

CLEVELAND METROPOLITAN BAR ASSOCIATION *v*. DONCHATZ.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Donchatz,* Slip Opinion No. 2017-Ohio-2793.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Indefinite suspension.*

(No. 2016-0859—Submitted January 10, 2017—Decided May 16, 2017.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2014-085.

_____

**Per Curiam.**

**{¶ 1}** Respondent, Kenneth R. Donchatz, of Columbus, Ohio, Attorney Registration No. 0062221, was admitted to the practice of law in Ohio in 1993.

**{¶ 2}** On March 23, 2015, relator, Cleveland Metropolitan Bar Association, filed an amended complaint with the Board of Professional Conduct charging Donchatz with multiple violations of the Rules of Professional Conduct in four

separate legal matters.  Specifically, the complaint alleged that Donchatz engaged in dishonest conduct in three separate matters and failed to timely communicate with a client regarding the nature and scope of his legal representation and his fee in a fourth matter.

{¶ 3} The parties entered into stipulations of fact.  A panel of the board conducted a hearing, at which it received numerous exhibits and heard testimony from several witnesses, including Donchatz.  Thereafter, the panel issued a report containing findings of fact, misconduct, and aggravating and mitigating factors and recommending that Donchatz be suspended from the practice of law for two years with six months stayed on the condition that he engage in no further misconduct.

{¶ 4} The board adopted the panel's findings and recommended sanction. Donchatz objects to the board's findings of misconduct with respect to Counts Three and Four, arguing that they are against the manifest weight of the evidence. Both parties object to the recommended sanction.

{¶ 5} For the reasons that follow, we adopt the board's findings of fact and misconduct, make additional findings of fact, and indefinitely suspend Donchatz from the practice of law in Ohio.

**Misconduct**

*Count One—The Davey Tree Litigation*

{¶ 6} In January 2010, Davey Tree Expert Company obtained a default judgment against Donchatz on unpaid invoices.  Without investigating or confirming that the judgment had been paid and without receiving authorization from Davey Tree, Donchatz filed a satisfaction of judgment in the Franklin County Municipal Court.

{¶ 7} Thereafter, Davey Tree's counsel informed Donchatz that a balance remained due and asked him to withdraw the satisfaction of judgment.  Donchatz confirmed that the judgment remained unpaid, but he did not withdraw his filing.

2

The court later granted Davey Tree's motion to vacate the satisfaction and reinstated the judgment.

**{¶ 8}** In October 2013, more than three years after the default judgment was entered and nearly 18 months after it was reinstated, Donchatz moved the court to reconsider the default judgment. Determining that the motion was frivolous and without merit, the court denied it and awarded sanctions to Davey Tree. But Donchatz did not pay the judgment or sanctions until April 15, 2014.

**{¶ 9}** Based on this conduct, the board found that Donchatz violated Prof.Cond.R 3.1 (prohibiting a lawyer from bringing or defending a proceeding that is unsupported by law or lacks a good-faith argument for an extension, modification, or reversal of existing law), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). We adopt these findings of fact and misconduct.

*Count Two—The Cracknell Matter*

**{¶ 10}** In early 2007, Donchatz began to represent a friend, Linda Cracknell, in the dissolution of a family partnership. At the outset of the representation, Donchatz and Cracknell agreed that there would be no fee, and there was never a written fee agreement. Cracknell testified that whenever she later would offer to pay Donchatz for representing her, he would respond, "Don't worry about it." Donchatz testified that he had told Cracknell from the beginning that his representation would be pro bono, but the evidence suggested otherwise. Specifically, in a May 2013 e-mail, he suggested that she file a fee-arbitration claim because she had not responded to his inquiry regarding his fee and he did not want to be left "holding the bag on the legal fees." In addition, during the representation,

Donchatz accepted an antique desk as a gift from Cracknell, which he later refurbished. And, on September 17, 2009, Donchatz borrowed $100,000 from Cracknell.

{¶ 11} Cracknell testified that Donchatz never advised her in writing that there were special rules governing transactions between lawyers and their clients, that there were potential conflicts of interest between lawyers and their clients in such transactions, or that she should seek independent counsel before making the loan to him. Nor did he provide her with a promissory note setting forth the terms of the loan as she requested. In December 2014, Cracknell agreed to accept $57,000 ($17,000 that Donchatz had already paid, plus an additional payment of $40,000) and the return of the antique desk as repayment of the loan.

{¶ 12} At the hearing, Donchatz admitted that he accepted the $100,000 check from Cracknell without providing the written notices required by Prof.Cond.R. 1.8(a) (prohibiting a lawyer from entering into a business transaction with a client unless the client is advised in writing of the desirability of obtaining independent legal counsel and the terms of the transaction are fair, reasonable, and fully disclosed in a writing signed by the client) and therefore violated the rule the moment he took the loan. In addition to finding a violation of that rule, the board found that he violated Prof.Cond.R. 1.5(b) (requiring an attorney to communicate the basis or rate of the fee and expenses within a reasonable time after commencing the representation, preferably in writing). Donchatz does not dispute these findings of fact or misconduct, and after independently reviewing the record, we adopt them.

*Count Three—The Hampton Matter*

{¶ 13} Donchatz represented attorney Carol Hampton in a disciplinary proceeding in 2014. In a deposition, Hampton testified that J.T. Holt, counsel for the person who had filed a grievance against her, had tape-recorded three meetings with Hampton regarding her alleged misconduct. Upon request, assistant disciplinary counsel Karen Osmond provided Donchatz with copies of two

recorded conversations but informed him that she did not have a recording of a third conversation. After Donchatz made a second request for the alleged recording of the third meeting, Osmond contacted Holt and was informed that Holt had not recorded that meeting. On April 29, 2014, Osmond informed Donchatz that Holt had denied that he had recorded the third meeting, provided him with Holt's phone number, and invited him to speak directly with Holt to verify that there was no recording of the third meeting.

{¶ 14} The next day, Donchatz filed a motion in limine claiming that Holt had recorded the third meeting and further stating:

> [D]espite two requests to do so, Relator has not produced this recording, instead taking the position that because Relator does not possess it, Relator does not have to produce it.
>
> But this response implicates Relator's basic duties as a prosecutor and calls into question the fundamental fairness of pursuing charges against Respondent when the prosecutor is fully aware that exculpatory evidence exists. Respondent now knows without a doubt that a recording exists that contains statements that exonerate the Respondent. * * * Yet, Relator hides behind a discovery rule rather than making sure that justice is fulfilled in this case.

Donchatz concluded his motion by declaring, "Since the Relator is *refusing to produce* exculpatory evidence with regards to Count Nine, the Hearing Panel should exclude evidence related to the aforementioned charges." (Emphasis added.)

{¶ 15} The board found that Donchatz's motion failed to mention that Osmond (1) had investigated the alleged third recording, (2) had informed

Donchatz that it did not exist, and (3) had given him the opportunity to investigate for himself whether the recording existed. In addition to finding that "Osmond viewed the statements about her conduct in the motion as 'just false,' " the board noted that after disciplinary counsel sought clarification from Donchatz, Donchatz "defended the statements he had made in the motion even though they were not true."

{¶ 16} The board found that by filing the motion in limine that contained false statements and misrepresentations, Donchatz violated Prof.Cond.R 3.1, 3.3(a)(1), 3.4(c), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d).

{¶ 17} Donchatz objects to the board's findings of fact and misconduct, arguing that the panel "disregarded the greater weight of credible evidence," issued a report that contains almost no analysis or reasoning, and failed to explain why his evidence was "disregarded." He claims that the evidence shows that statements he made in his motion had a reasonable basis in fact and that he disclosed those facts in the motion and more fully in his later response to disciplinary counsel's letter of inquiry. He therefore contends that the challenged statements were "statement[s] of opinion" subject to First Amendment protection rather than "knowingly false statement[s]" actionable under the Rules of Professional Conduct. And he urges us to evaluate his statements under the test articulated in *Berry v. Schmitt*, 688 F.3d 290 (6th Cir.2013), which held that "[a]n opinion can 'be the basis for sanctions only if it could reasonably be understood as declaring or implying actual facts capable of being proved true or false.' " *Id.* at 303, quoting *Standing Comm. on Discipline of the United States Dist. Court for the Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1438-1439 (9th Cir.1995).

{¶ 18} Generally, the First Amendment protects an attorney as it would any ordinary citizen, except for when the attorney is acting in some professional capacity in the matter in which the speech occurs. *See* Charles W. Wolfram,

*Modern Legal Ethics* 632 (1986). Indeed, the United States Supreme Court has observed that "lawyers in pending cases [are] subject to ethical restrictions on speech to which an ordinary citizen would not be." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1071, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). Given that attorneys are officers of the court with an integral role in the judicial system, the court has concluded, narrow restrictions on attorney speech are justified when that speech is highly likely to obstruct or prejudice the administration of justice. *Id.* at 1074-1076; *accord Disciplinary Counsel v. Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, ¶ 14.

**{¶ 19}** In light of this principle, Donchatz's reliance on *Berry* is misplaced. The statement at issue in *Berry* was in a postproceeding letter written by an attorney in his role as a private citizen, *Berry* at 305—whereas Donchatz's statements were in a motion filed in court. The Sixth Circuit recognized that an attorney's right to free speech is " 'extremely circumscribed' " once the attorney enters a courtroom and took no position on whether its analysis would apply to attorney statements that were made in the course of judicial proceedings. *Id.* at 304, quoting *Gentile* at 1071. Separately, the Sixth Circuit made clear that whether an attorney is engaged in a judicial proceeding—either in court or through the filing of pleadings—impacts whether the attorney's speech is protected. *Lewter v. Kannensohn*, 159 Fed.Appx. 641, 645 (6th Cir.2005), quoting *Mezibov v. Allen*, 411 F.3d 712, 720-721 (6th Cir.2005)) ("We held that because attorneys are usually not 'engaged in free expression,' but, by 'filing motions and advocating for [a] client' attorneys are simply 'doing [their] job', and because attorneys voluntarily agree to relinquish their rights in judicial proceedings, 'in the context of the courtroom proceedings, *an attorney retains no personal First Amendment rights* when representing his client in those proceedings.' " (Brackets and emphasis sic and citation omitted.)

**{¶ 20}** Consistent with this precedent, we previously adopted an objective standard to determine whether a lawyer's statements during the course of judicial

proceedings about a judicial officer were made with knowledge or reckless disregard of their falsity. *Gardner* at ¶ 26-29. We now apply the same standard to lawyers' statements made during the course of judicial proceedings against other lawyers or officers of the court. To assess such a statement, we consider what a reasonable attorney—in light of all the attorney's professional obligations—would do under the same or similar circumstances and we focus on whether the attorney had a reasonable factual basis for making the statement. *Id.* at ¶ 26; *Yagman*, 55 F.3d at 1437, citing *United States Dist. Court for the E. Dist. of Washington v. Sandlin*, 12 F.3d 861, 867 (9th Cir.1993).

{¶ 21} Here, Donchatz argues that he had a reasonable factual basis for stating that Osmond had refused to produce exculpatory evidence because (1) Hampton and her son asserted, when deposed during the disciplinary investigation and separately to Donchatz, that Holt had recorded the third meeting, (2) Holt had a proven practice of recording meetings given the existence of two other recordings, and (3) Osmond did not give him or his predecessor copies of the two known recordings until April 29, 2014—approximately two years after the investigation into Hampton's misconduct began.

{¶ 22} Donchatz's assertions are unpersuasive. The transcripts of Hampton's and her son's deposition testimony reflect only hearsay knowledge of a third recording, gleaned from a statement that Holt's client had made to Hampton and a newspaper article that Hampton's son claimed to have read. Thus, the existence of a third recording was far from certain, and Donchatz's reliance on the hearsay assertions when making his statements against Osmond was unreasonable.

{¶ 23} And although Osmond did not immediately provide Hampton or her counsel with copies of the two existing recordings, she testified that they did not contain exculpatory evidence, that they were disclosed as potential exhibits several months before Donchatz requested them, and that Holt had been disclosed as a potential witness at least six months before the scheduled hearing date. Nothing

about Osmond's conduct regarding the two existing recordings would lead a reasonable attorney to conclude that she was refusing to disclose a third recording.

{¶ 24} Moreover, Donchatz's own efforts to find the alleged third recording were minimal. Neither Donchatz nor his predecessor made any formal discovery requests in Hampton's disciplinary matter. And although Osmond provided Holt's telephone number so that Donchatz could contact him about whether he had a third recording, Donchatz attempted to call Holt just once, using a telephone number provided by *his own client*, and he never actually spoke with Holt or made any additional attempt to obtain the recording directly from him. We have previously held in a different context that although it is improper for a law-enforcement agency to suppress evidence, "it is not the agency's obligation to engage in affirmative action in gathering evidence which an accused might feel necessary to his defense. The accused must protect his own interests." *Kettering v. Baker*, 42 Ohio St.2d 351, 354, 328 N.E.2d 805 (1975).

{¶ 25} Just one day after Osmond told Donchatz that she had inquired about the existence of a third recording, Donchatz challenged Osmond's personal integrity and the integrity of the entire disciplinary process in his motion in limine. Given all the information available to Donchatz at the time he filed his motion, we find that no reasonable attorney would have alleged that Osmond was "fully aware" that exculpatory evidence existed or that she was "refusing to produce" it. Nor would a reasonable attorney have attempted to shift the blame for his own failure to conduct discovery by impugning the integrity of an assistant disciplinary counsel, the office of disciplinary counsel, and the entire disciplinary process.

{¶ 26} Based on the foregoing, we find that the weight of the evidence supports the board's finding that Donchatz knowingly made false statements of fact in the motion in limine that he filed with the board. We therefore overrule Donchatz's objection to the board's findings of fact regarding the Hampton matter

and agree that his filing of the motion violated Prof.Cond.R. 3.1, 3.3(a)(1), 3.4(c), 8.4(c), and 8.4(d).

*Count Four—The McKibben/Leader Technologies Matter*

{¶ 27} While Donchatz was affiliated with a law firm, he represented Leader Technologies, Inc., and its principal, Michael McKibben. The law firm later initiated legal action against Leader and McKibben for unpaid attorney fees. When the firm dissolved, certain receivables were assigned to Donchatz and he in turn assigned them to Recovery Funding, L.L.C., of which Donchatz was the sole member. Recovery Funding was substituted for Donchatz's former law firm as a party in the action against Leader and McKibben. The matter was referred to mediation, and a magistrate was assigned as the mediator. The board found that although the parties to the attorney-fee litigation agreed about the amount of fees owed, they were unable to resolve several remaining issues in mediation.

{¶ 28} In early April 2012, Donchatz circulated a draft "stipulated entry and consent judgment." Neither Leader nor McKibben consented to Donchatz's document. Nonetheless, without any direction from the mediator to do so, Donchatz submitted the document to the court. The document did not indicate that it was a draft or proposed judgment, nor did it mention that other issues remained unresolved.

{¶ 29} The court adopted the consent judgment and terminated the case, prompting McKibben and Leader's counsel, Robert Storey, to request that Donchatz withdraw the document that the court had relied on. In an e-mail, Storey wrote that if Donchatz did not withdraw the document, Storey would be left with "no recourse but to institute disciplinary action." Donchatz responded by threatening Storey with an action for frivolous conduct and alleging that Storey had "defam[ed]" him and "commit[ted] fraud upon the court." Donchatz refused to withdraw the document and instead filed a response in opposition to McKibben's formal objection to the entry. The trial court ultimately vacated the consent

judgment, finding that there had been no settlement agreement between the parties and that the entry had been signed in error.

{¶ 30} Before the board, Donchatz argued that the "stipulated entry and consent judgment" was proper under Loc.R. 25.01 of the Court of Common Pleas of Franklin County, General Division. As explained below, however, the board determined that Loc.R. 25.01 did not apply in this case. And, based on the foregoing, the board found that by filing the "stipulated entry and consent judgment," Donchatz violated Prof.Cond.R. 3.1, 3.3(a)(1), 3.4(c), 8.4(c), and 8.4(d).

{¶ 31} Donchatz objects and argues that the board's findings are against the manifest weight of the evidence. He contends that all his actions were taken with the advice and guidance of his counsel, attorney Rick Brunner, and that the board improperly disregarded Brunner's "uncontested" testimony that Donchatz's actions complied with the local rules and the customs and practices of attorneys in Franklin County.

{¶ 32} Loc.R. 25.01 directs "counsel for the party in whose favor a decision, order, decree, or judgment is rendered" to prepare a journal entry and submit it to counsel for the adverse party, who then has three days to approve or reject the proposed entry. The rule further provides that an entry approved by opposing counsel "shall be signed and presented to the Trial Judge for approval" and that if the judge signs the entry, it shall be filed with the clerk. But, if counsel does not agree to the entry, the rule specifies that "the dispute shall be submitted to the Trial Judge, who will direct what entry shall be made."

{¶ 33} In this case, however, the board found that the rule did not apply because there was no judicial decision, order, decree, or judgment rendered in Donchatz's favor. Moreover, nothing in the local rules or our jurisprudence purports to create a stipulated entry or consent to judgment by implication based solely on a party's failure to timely object to an opposing party's proposal.

Therefore, we find that the board properly disregarded Brunner's testimony regarding the alleged propriety of Donchatz's actions. In addition, the board's finding that Donchatz made a false statement to the court was supported by the evidence. Although Donchatz testified that the mediator had requested that he circulate the "stipulated entry and consent judgment," Storey testified that the mediator had instructed Donchatz simply to put his settlement proposal in writing. The panel heard this conflicting testimony and was therefore in the best position to determine the two witnesses' credibility and assess the weight of the evidence. The panel believed Storey, and because the record does not weigh heavily against the panel's determinations, we defer to them. *See Disciplinary Counsel v. Heiland*, 116 Ohio St.3d 521, 2008-Ohio-91, 880 N.E.2d 467, ¶ 39, citing *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8.

{¶ 34} Based on the foregoing, we overrule Donchatz's objection to the board's findings of fact regarding the McKibben/Leader Technologies matter, and we adopt the board's findings that his conduct violated Prof.Cond.R. 3.1, 3.3(a)(1), 3.4(c), 8.4(c), and 8.4(d).

**Sanction**

{¶ 35} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases. "The primary purpose of the disciplinary process is to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship and to allow us to ascertain the lawyer's fitness to practice law." *Disciplinary Counsel v. Sabroff*, 123 Ohio St.3d 182, 2009-Ohio-4205, 915 N.E.2d 307, ¶ 20.

{¶ 36} The board found that just two mitigating factors are present—the absence of prior discipline and the imposition of another sanction, namely the Franklin County Municipal Court's order requiring Donchatz to pay Davey Tree's

12

attorney fees. *See* Gov.Bar R. V(13)(C)(1) and (6). As aggravating factors, the board found that Donchatz committed multiple offenses and refused to accept any responsibility for his misconduct because he personally failed to admit any wrongdoing even though his counsel conceded rule violations during his closing argument. *See* Gov.Bar R. V(13)(B)(4) and (7). The board also found that Donchatz acted with a selfish motive because he "repeatedly and intentionally" failed to withdraw court filings that were calculated for his personal advantage and that he caused damage to clients and his profession. *See* Gov.Bar R. V(13)(B)(2) and (8).

{¶ 37} Although the board did not expressly identify Donchatz's submission of false evidence, false statements, or other deceptive practices during the disciplinary process as aggravating factors, it identified numerous acts that amply support such findings. *See* Gov.Bar R. V(13)(B)(6).

{¶ 38} Specifically, the board noted that Donchatz's responses to each of the four counts against him lacked credibility and called into question his character and integrity as a lawyer. For example, in the Davey Tree matter, Donchatz offered three different explanations for his belief that the judgment against him had been satisfied, but none of those explanations proved to be true.

{¶ 39} The board also found that while Donchatz claimed that it would have been improper for him to modify the title of the "stipulated entry and consent judgment" in the McKibben/Leader Technologies matter to reflect that it was merely a proposed document that had not been approved by the other parties, he actually did modify the document to reflect that it had been submitted to the opposing parties for their approval before he submitted it to the court. And although he testified that he was not seeking to obtain a judgment entry terminating the case, he never informed the court of that fact and actually opposed McKibben's attempt to have the consent judgment set aside.

**{¶ 40}** The board's findings with regard to Donchatz's conduct in the Cracknell matter further support a finding that Donchatz submitted false statements and engaged in deceptive practices in the disciplinary process. Donchatz testified that he sent Cracknell an e-mail explaining the rules governing business transactions between attorneys and their clients (though he later testified that the e-mails are inaccessible because the computer hard drive containing them is damaged). But his initial response to the Cracknell grievance does not mention any e-mail regarding the disclosures required by Prof.Cond.R. 1.8(a), and in his answer to the amended complaint, he *admitted* that he never made the required communication in writing.

**{¶ 41}** But those are not the only false statements that Donchatz made regarding his representation of Cracknell. Donchatz testified that he had agreed to handle the matter pro bono and that his purpose in instructing her to seek fee arbitration was to have a third party convince her that she did not need to pay him for his services. But in Donchatz's initial response to relator's investigation of the Cracknell matter, his counsel, Richard Alkire, stated that Donchatz issued a bill to Cracknell each month during his representation with a description of the work performed and the time he had spent on that work. Alkire claimed, however, that the bills did not state an amount due for Donchatz's services because Donchatz and Cracknell had agreed "to try and get the partnership to pay" Donchatz's legal fees and that "[a]nytime the difficulty inherent in this approach was discussed, [Cracknell] would indicate to Ken that, 'I'll take care of it at the end. Don't worry.' "

**{¶ 42}** Moreover, in the same e-mail in which Donchatz recommended that Cracknell pursue fee arbitration with the local bar association, he stated:

> Throughout this case you said to me and several others that you
> would take care of [the legal fees] at "the end." I also recall you

14

> telling me * * * that I should use the [loan] money for legal fees, although I am sure that you guys will say that you don't remember that. I think I would like to have the arbitrators look at all of this and make a decision about the [loan] funds and the legal fees.

These are hardly the words of an attorney seeking to convince a client that he never intended to collect a fee for his services, and they cannot be reconciled with Donchatz's testimony that he intended to represent Cracknell pro bono.

{¶ 43} Accordingly, in addition to the aggravating factors noted by the board, we find that Donchatz also submitted false statements and engaged in other deceptive practices during the disciplinary process. *See* Gov.Bar R. V(13)(B)(6).

{¶ 44} The parties did not agree on the appropriate sanction for Donchatz's misconduct. Relator sought an indefinite suspension of Donchatz's license, while Donchatz argued in favor of a fully stayed suspension.

{¶ 45} In weighing the appropriate sanction for Donchatz's misconduct, the board quoted the following passage from our decision in *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237 (1995):

> A lawyer who engages in a material misrepresentation to a court * * * violates, at a minimum, the lawyer's oath of office that he or she will not "knowingly * * * employ * * * any * * * deception, falsehood, or fraud." [Former] Gov.Bar R. I(8)(A). Such conduct strikes at the very core of a lawyer's relationship with the court and with the client. Respect for our profession is diminished with every deceitful act of a lawyer. We cannot expect citizens to trust that lawyers are honest if we have not sanctioned those who are not.

(Second and fourth ellipses sic.) *Id.* at 190.

**{¶ 46}** And the board acknowledged that this court "will not allow attorneys who lie to courts to continue practicing law without interruption." *Cleveland Bar Assn. v. Herzog*, 87 Ohio St.3d 215, 217, 718 N.E.2d 1274 (1999), citing *Toledo Bar Assn. v. Batt*, 78 Ohio St.3d 189, 192, 677 N.E.2d 349 (1997). Indeed, the board considered several cases in which we indefinitely suspended attorneys for conduct involving dishonesty, fraud, deceit, or misrepresentation, *see, e.g.*, *Disciplinary Counsel v. Frost*, 122 Ohio St.3d 219, 2009-Ohio-2870, 909 N.E.2d 1271; *Cleveland Metro. Bar Assn. v. Wrentmore*, 138 Ohio St.3d 16, 2013-Ohio-5041, 3 N.E.3d 149, and noted our pronouncement that "[t]here is simply no place in the legal profession for those who are unwilling or unable to be honest with clients, the courts, and their colleagues," *Columbus Bar Assn. v. Cooke*, 111 Ohio St.3d 290, 2006-Ohio-5709, 855 N.E.2d 1226, ¶ 32.

**{¶ 47}** Nonetheless, the board found our decision in *Disciplinary Counsel v. Shaw*, 126 Ohio St.3d 494, 2010-Ohio-4412, 935 N.E.2d 405, to be more instructive. Shaw named his own children as the beneficiaries of an elderly client's revocable living trust and accepted an unsecured loan from the same client. He took those actions without advising his client of the inherent conflicts of interest or suggesting that she seek the advice of independent counsel and also failed to repay the loan as agreed. In addition, in an unrelated matter, he improperly obtained fees from his clients in a guardianship without first obtaining the court's approval and then sought to collect additional fees from the probate court.

**{¶ 48}** We found that Shaw engaged in a pattern of misconduct involving multiple offenses that caused harm to vulnerable clients, that he failed to make restitution, and that he attempted to minimize his misconduct—though he did amend the client's trust to revoke the bequest to his children and had practiced law for 30 years without prior discipline. *Id.* at ¶ 15 and 26. We suspended him from the practice of law for two years with one year stayed on the conditions that he

engage in no further misconduct and make restitution to the affected clients. *Id.* at ¶ 30.

{¶ 49} In light of the sanction we imposed in *Shaw* and granting weight to the fact that Donchatz has no prior disciplinary record, the panel and board recommend that Donchatz be suspended from the practice of law for two years with six months stayed on the condition that he engage in no further misconduct.

{¶ 50} Both parties object to the board's recommended sanction. Donchatz argues that it is too harsh because the board "improperly disregarded" his mitigation evidence, which includes extensive pro bono and community service and letters from colleagues, clients, and friends that attest to his good character and generosity. In contrast, relator argues that Donchatz's repeated acts of dishonesty and refusal to accept responsibility for his misconduct warrant an indefinite suspension from the practice of law.

{¶ 51} Having independently reviewed the record, we find the board's reliance on *Shaw* to be misplaced. We acknowledge that a portion of Donchatz's misconduct arises from his acceptance of a gift and a loan from Cracknell without properly advising her about the inherent conflicts of interest in those business dealings—conduct comparable to that in *Shaw*. But Donchatz's misconduct also involves multiple instances of dishonesty, fraud, deceit, or misrepresentation. He has made knowingly false statements of fact and law to multiple tribunals. He has knowingly disobeyed his obligations under the rules of multiple Ohio courts. And he has prejudiced the administration of justice in multiple cases. Furthermore, Donchatz has continued to engage in dishonest conduct throughout this disciplinary proceeding.

{¶ 52} We acknowledge that Donchatz has submitted 16 letters that attest to his honesty, his compassion, his competent and zealous representation, his skills as an attorney, and his commitment to volunteering with the Ohio Center for Law-Related Education. We note, however, that only four of those letters reflect that

the writers were aware of the serious ethical charges pending against him. And we find that the mitigating effect of the letters is insufficient to overcome Donchatz's extensive pattern of dishonesty and the numerous aggravating factors present in this case.

{¶ 53} Having thoroughly reviewed the record and considered the sanctions we have imposed for comparable misconduct, we adopt the board's findings of fact, misconduct, and aggravating and mitigating factors. As a result of the significant acts of dishonesty at the heart of three of the four counts of relator's amended complaint and the false and contradictory statements that Donchatz has made throughout the disciplinary process, we find that the sanction recommended by the board will not adequately protect the public from future harm. Therefore, we overrule Donchatz's objection with regard to the recommended sanction, sustain relator's objection to the sanction, and indefinitely suspend Donchatz from the practice of law.

{¶ 54} Accordingly, Kenneth R. Donchatz is indefinitely suspended from the practice of law in Ohio. Costs are taxed to Donchatz.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, FISCHER, and DEWINE, JJ., concur.

KENNEDY, FRENCH, and O'NEILL, JJ., dissent and would suspend respondent for 24 months with six months stayed.

_____

Tucker Ellis, L.L.P., Sarah L. Bunce, and Robert J. Hanna; and Heather M. Zirke, Bar Counsel, for relator.

Montgomery, Rennie & Jonson and George D. Jonson, for respondent.

_____

18