**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. Moody,* **Slip Opinion No. 2018-Ohio-4071.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4071

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* MOODY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Moody,* Slip Opinion No. 2018-Ohio-4071.]**

*Attorneys—Misconduct—Failure to act with reasonable diligence—Knowingly making false statements to a tribunal or third person—Intentionally failing to comply with proper discovery requests—Counseling a witness to testify falsely—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Engaging in conduct that is prejudicial to the administration of justice—Indefinite suspension.*

(No. 2017-1738—Submitted April 10, 2018—Decided October 11, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-008.

_____

**Per Curiam.**

{¶ 1} Respondent, Steven Jerome Moody, of Cleveland, Ohio, Attorney Registration No. 0074731, was admitted to the practice of law in Ohio in 2002.

{¶ 2} In a February 8, 2017 complaint, relator, Cleveland Metropolitan Bar Association, alleged that while representing a single client, Moody failed to act with reasonable diligence and promptness, failed to keep the client reasonably informed about the status of his legal matter, intentionally failed to comply with proper discovery requests, knowingly made false statements to opposing counsel and a tribunal, and counseled a client to give false deposition testimony. Although relator later amended its complaint to add a second count with additional allegations of misconduct, a panel of the Board of Professional Conduct unanimously dismissed the second count as well as one violation alleged in the original complaint.

{¶ 3} Based on the hearing testimony and the stipulated exhibits of the parties, the panel found that Moody committed the remaining charged misconduct, and it recommended that he be indefinitely suspended from the practice of law in Ohio. The board adopted the panel's report in its entirety.

{¶ 4} Moody objects to the board's findings of misconduct and its recommended sanction, arguing that the board failed to properly weigh the evidence and that an indefinite suspension is unwarranted. For the reasons that follow, we overrule Moody's objections, adopt the board's findings of fact and conclusions of law, and indefinitely suspend Moody from the practice of law in Ohio.

## Misconduct

{¶ 5} In March 2015, Elton Barrios retained Moody to represent him in an employment-discrimination action against Barrios's former employer, PNC, Inc. One month later, Moody filed a complaint in state court. PNC, which was represented by attorney Siobhan M. Sweeney, of Boston, Massachusetts, caused

the case to be removed to federal court. *Barrios v. PNC, Inc.*, N.D. Ohio case No. 1:15-cv-01131-CAB.

{¶ 6} In September 2015, Sweeney served Moody with interrogatories, a request for production of documents, and a notice to take Barrios's deposition on October 20, 2015. She later suspended the deposition because Moody did not timely respond to her written discovery requests. On October 21, Moody asked Sweeney for more time and received an extension to respond to PNC's discovery requests—though he failed to comply within the extended deadline.

{¶ 7} Sweeney rescheduled Barrios's deposition for November 6, 2015. She served Moody on October 23, 2015, with a notice of deposition, and on November 2, she reminded him of the deposition. Although Sweeney traveled from Boston to Cleveland for the deposition, neither Moody nor Barrios appeared. Unable to contact Moody, Sweeney adjourned the deposition. Shortly thereafter, Moody called Sweeney to advise her—for the first time—that he had a conflict on the deposition date and wished to reschedule.

{¶ 8} Based on Moody's repeated failure to comply with discovery requests, Sweeney filed a motion to compel. After a telephone conference with counsel, a magistrate judge granted the motion, ordering that Barrios's responses to PNC's interrogatories be provided no later than November 20, 2015, and that Barrios appear for a deposition on December 21, 2015.

*Moody's Communications with Barrios*

{¶ 9} Moody sent PNC's interrogatories to Barrios for the first time on the day of the magistrate judge's telephone conference and asked Barrios to provide his responses later that day. He submitted Barrios's responses to Sweeney by the court-ordered deadline, but they were neither verified nor notarized. Instead, Moody typed Barrios's name on the signature line under Barrios's verification statement and typed his own name on the notary-signature line.

*Deposition Preparation*

{¶ 10} Moody did not notify Barrios about his impending deposition until December 12, 2015—a full month after the court had scheduled it and just nine days before it was to occur.  He met with Barrios on December 19 to prepare him for the deposition.  Barrios surreptitiously recorded their conversation, although the recording is not in the record.  Moody admitted that during the meeting, he made the following statements regarding Sweeney's written discovery requests:

• "In this particular case, what I would do is, because we're fighting the bank, right, I would fuck with this person at this stage."

• "She sent me an interrogatory, request for production of documents, I completely ignored her ass for a few months.  And I made her file a Motion to Compel, and then I called her and said, oh, yeah, I'll get them to you in two weeks.  And then I completely ignored her ass again."

• "So we did a telephone conference with the Magistrate, and I was like, oh, Your Honor, if only I had known, you know.  I said, you know, I moved my office * * *, and I didn't know that she was—she sent those things to the wrong address.  But I'll get them out.  And I said, you know, this wasn't necessary.  So, I wanted to make her seem like an ass."

{¶ 11} With regard to Sweeney and the failed depositions, Moody admitted that he told Barrios: "That's why I did her like I did her.  Because I made that bitch fly into town.  And they were calling me and shit.  I was like, oh, I've been there.  And I was in court, too."

{¶ 12} In addition, concerning Sweeney's approach to Barrios's court-ordered deposition, Moody admitted that he told Barrios:

• "So they're trying to get—you know, trying to play games, because I played a game with her about not giving them to her.  So, you know, I told you everything.  And obviously, you know, you don't want to discuss that I played a game with her, you know.  But that's basically it."

- "Yeah. She isn't going to want no part of your ass. And this might take all day * * *[.] Yeah. Because looks, she's an arrogant bitch, okay?"

- "Yeah. It might be eight hours. Because we gave them a ton of documents. Everything that you gave me, you know, is part of what she asked for, and it was stuff that helped. There's a lot of shit out there, all, right? And we didn't send out any discovery. We don't need it. She might ask you, do you know that your attorney didn't send any discovery, do you know that you were supposed to be here on, whatever the—she had one or two dates. Did your attorney tell you that you were supposed to be present for those depositions? Yes."

{¶ 13} At the disciplinary hearing, Moody testified that he was only "puffing" in an effort to give Barrios confidence in his case and his counsel. Moody also claimed that he had made certain exculpatory statements at the end of his December 19 conversation with Barrios that were not recorded. Further, he testified that he had inadvertently failed to timely comply with Sweeney's discovery requests and appear at the November deposition because he had transitioned in April 2015 from a brick-and-mortar office to a virtual office and had been keeping track of all his communications from courts, lawyers, and clients on his cell phone. Barrios, on the other hand, testified that he had recorded their entire conversation and that Moody never disavowed any of the statements that he has admitted he made. After weighing the conflicting evidence, the board found that Moody's claims were not credible.

{¶ 14} Therefore, the board found that Moody violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 3.4(b) (prohibiting a lawyer from counseling or assisting a witness to testify falsely), 3.4(c) (prohibiting a lawyer from

knowingly disobeying an obligation under the rules of a tribunal), 3.4(d) (prohibiting a lawyer from intentionally failing to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party), 4.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact or law to a third person), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

**Recommended Sanction**

**{¶ 15}** When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 16}** The board found that just one mitigating factor is present in this case—the absence of a prior disciplinary record. *See* Gov.Bar R. V(13)(C)(1). As aggravating factors, the board found that Moody acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple violations of the professional-conduct rules, and refused to acknowledge the wrongful nature of his misconduct. *See* Gov.Bar R. V(13)(B)(2), (3), (4), and (7). The board also attributed some aggravating effect to Moody's refusal to accept any responsibility or show any remorse for his misconduct, his attempt to shift the blame for some of his misconduct to his client, and the fact that Moody's conduct toward opposing counsel in the underlying litigation constituted gender disparagement. While the board found that Moody's response to the charges in this case lacked credibility and called his character and integrity into question, it stopped short of finding that he submitted false evidence, made false statements, or engaged in other deceptive practices during the disciplinary process. *See* Gov.Bar R. V(13)(B)(6).

**{¶ 17}** Because Moody engaged in dishonesty and misrepresentation in violation of Prof.Cond.R. 8.4(c), the board recognized that, at a minimum, his

misconduct warrants a term suspension from the practice of law. *See Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190, 658 N.E.2d 237 (1995). In *Disciplinary Counsel v. Stafford*, 128 Ohio St.3d 446, 2011-Ohio-1484, 946 N.E.2d 193, we suspended Vincent Stafford for 18 months with six months stayed on conditions because he did not respond to discovery requests for more than a year in an attempt to " 'obfuscate and hinder the truth-seeking process,' " *id.* at ¶ 52, quoting the board's report, and because of his "lack of candor, his disrespect and discourtesy to fellow officers of the court, and his dilatory discovery tactics," *id.* at ¶ 83. The board here, however, determined that Moody's discovery violations were more egregious and flagrant than those of Stafford. Given that Moody had neglected his client's affairs, intentionally frustrated the discovery process, made misrepresentations to the court and opposing counsel, advised his client to lie, disparaged opposing counsel, and forged a defense to the resulting disciplinary matter that was simply not credible, the board determined that an indefinite suspension was necessary to protect the public from future harm.

**{¶ 18}** In support of that sanction, the board cited two cases in which we indefinitely suspended attorneys who engaged in multiple dishonest acts in the course of litigation. *See Cleveland Metro. Bar Assn. v. Gruttadaurio*, 136 Ohio St.3d 283, 2013-Ohio-3662, 995 N.E.2d 190; *Cleveland Metro. Bar Assn. v. Donchatz*, 150 Ohio St.3d 168, 2017-Ohio-2793, 80 N.E.3d 444.

### Moody's Objections

**{¶ 19}** Moody objects to the board's findings of misconduct and aggravating and mitigating factors and its recommended sanction. He raises a host of arguments in support of two main contentions: that the record fails to support seven of the nine violations found by the board and that if we do not dismiss the entire complaint, we should not impose any sanction greater than a one-year suspension with six months stayed on conditions.

**{¶ 20}** Among Moody's arguments are claims that the hearing panel failed to properly consider and weigh the evidence presented. He contends that the board should have afforded greater weight to his testimony that he inadvertently lost track of Sweeney's discovery requests and deposition notices due to the loss of his physical office location in April 2015. He further testified that he then lied to his client—but not to the court or opposing counsel—about the reason for his failure to comply with the discovery requests in order to demonstrate that he had the upper hand in the litigation. He argues that there is no evidence that he ever made false statements to Sweeney or the magistrate because they did not testify at his disciplinary hearing. Moody further maintains that by advising Barrios once or twice to tell the truth, Moody negated his specific instruction to Barrios that Barrios should answer "yes" if he were asked whether Moody had told him about the first two scheduled depositions—even though Moody *admitted* that he did not so inform him.

**{¶ 21}** The essence of Moody's arguments is that the panel erred in finding that his previous admissions and Barrios's testimony about their December 19, 2015 meeting were more credible than Moody's hearing testimony. But our precedent is clear—"we ordinarily defer to a panel's credibility determinations in our independent review of professional discipline cases unless the record weighs heavily against those findings." *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8.

**{¶ 22}** Here, Moody admitted that he had received Sweeney's interrogatories, requests for production, and multiple notices of depositions. Yet he told Barrios that he had played games in an effort to delay Sweeney's discovery process, to inconvenience her by making her fly into town for depositions that he had no intention of attending, and to make her look bad in front of the court. He also told Barrios that he had lied to Sweeney and the magistrate about those matters. Those statements are admissions by a party-opponent; as such they are not hearsay

and may be considered for the truth of the matter asserted. *See* Evid.R. 801(D)(2). Although Moody claimed at the disciplinary hearing that he had disavowed those statements at the end of his conversation with Barrios, Barrios unequivocally testified that Moody made no such retraction—and the hearing panel found Barrios's testimony to be more credible.

{¶ 23} Having independently reviewed the full record in this case, we have no trouble understanding why the panel found Barrios's testimony to be credible while repeatedly stating that Moody's testimony lacked credibility. Based on Moody's admissions to his client—and the reasons underlying the board's findings that his testimony attempting to retract those admissions was simply not credible— there is ample evidence to support each of the board's findings of misconduct. Moreover, we reject Moody's arguments that the board erroneously attributed aggravating effect to certain facts and failed to attribute mitigating effect to others—because many of those findings are inextricably linked to the panel's credibility determinations.

{¶ 24} Moody's final objection to the board's report is that his misconduct does not warrant an indefinite suspension. He contends that his misconduct is distinguishable from that in *Gruttadaurio* and *Donchatz* because it occurred over a period of just eight months and affected a single client—while the conduct of Gruttadaurio and Donchatz affected multiple clients and spanned periods of one to seven years.

{¶ 25} Moody argues that we should consider additional cases in which we imposed term suspensions for misconduct that was arguably more egregious than his. For example, he argues that we suspended Joseph G. Stafford from the practice of law for 12 months based on findings that he had twice engaged in dishonest conduct and abused legal procedures for the ostensible benefit of his clients. *See Disciplinary Counsel v. Stafford*, 131 Ohio St.3d 385, 2012-Ohio-909, 965 N.E.2d 971. Moody also notes that we suspended Leo Johnny Talikka for two years with

one year stayed on conditions for stipulated misconduct that included the neglect of three separate client matters, failure to refund the unearned portion of several client retainers, failure to safeguard client funds and maintain required records of entrusted funds, and unspecified acts of dishonesty, fraud, deceit, or misrepresentation in five separate matters, one of which was prejudicial to the administration of justice. *Disciplinary Counsel v. Talikka*, 135 Ohio St.3d 323, 2013-Ohio-1012, 986 N.E.2d 954.

{¶ 26} Joseph Stafford's case is distinguishable from the facts of this case because Stafford's actions were not found to be prejudicial to the administration of justice. *Stafford* at ¶ 32. And while Talikka may have committed more rule violations than Moody, we also found that he took on more work than he could handle as he faced a series of significant health problems, accepted full responsibility for his misconduct, made full restitution, and submitted evidence of his good character and reputation. *Talikka* at ¶ 20-21.

{¶ 27} Despite Moody's arguments to the contrary, his conduct is most comparable to that of *Gruttadaurio* and *Donchatz* given the nature, if not the extent, of the underlying misconduct and the implausible explanations and justifications that each of those attorneys offered for their misconduct in the course of the disciplinary process.

{¶ 28} Gruttadaurio failed to place client fees into his client trust account, failed to refund unearned fees, failed to perform contracted work, failed to attend the final hearing in a client's case, and lied to relator's investigator about his purported efforts to file a client's appeal. During his first meeting with relator's investigator, Gruttadaurio stated that he had mailed a notice of appeal and related documents to this court, had called this court to check on their status, and had been informed that the documents were "in the system" but not yet on the docket— though in truth the documents were never received by this court. *Gruttadaurio*, 136 Ohio St.3d 283, 2013-Ohio-3662, 995 N.E.2d 190, at ¶ 25-28. Gruttadaurio

later attempted to retract that statement by claiming that he had been put on the spot and that "further investigation," *id.* at ¶ 34, of his records made him realize his error—but he had made the same misrepresentations several months earlier in a detailed written response to the grievance.

{¶ 29} Donchatz filed a satisfaction of judgment falsely stating that a default judgment taken against him had been paid, knowingly made false statements impugning the integrity of the office of disciplinary counsel in a motion filed in his own disciplinary action, and submitted a "stipulated entry and consent judgment," *Donchatz*, 150 Ohio St.3d 168, 2017-Ohio-2793, 80 N.E.3d 444, at ¶ 28, to a court in a client's case without first obtaining the consent of the opposing party. Donchatz also failed to acknowledge the wrongful nature of his conduct and continued to engage in dishonest conduct throughout the disciplinary proceeding. Like Gruttadaurio, he could not keep his story straight. He offered three different explanations—all false—to justify his filing of a false and unauthorized satisfaction of a judgment taken against him. *Id.* at ¶ 38. Donchatz also made numerous false and contradictory statements regarding a fee arrangement, claiming at various times that he had (1) agreed to represent the client pro bono, (2) agreed with the client to seek payment of his fee through a third-party source, (3) wanted to not be left "holding the bag on the legal fees," and (4) instructed the client to seek fee arbitration to convince her that she did not need to pay him for his services. *Id.* at ¶ 10, 41-43.

{¶ 30} Moody's explanation that he lied in an effort to increase his client's confidence, like the dubious explanations given by Gruttadaurio and Donchatz, has no place in a profession grounded in honesty, integrity, and trustworthiness. Rather than increasing Barrios's confidence in Moody's capabilities, Moody's statements had the opposite effect. Barrios testified that he was confused and "kind of mind-boggled" that Moody asked him to lie under oath to cover up Moody's misconduct or foolishness. Barrios could not sleep for two or three days as he tried to figure

out what to do, and he ultimately terminated Moody's representation to avoid being part of his deceit.

**{¶ 31}** Regardless of whether Moody's statements to Barrios were true or false, they raise questions about his integrity and his ability to conduct himself in a manner that engenders respect for the law and the profession. "One of the fundamental tenets of the professional responsibility of a lawyer is that he should maintain a degree of personal and professional integrity that meets the highest standard. The integrity of the profession can be maintained only if the conduct of the individual attorney is above reproach." *Cleveland Bar Assn. v. Stein*, 29 Ohio St.2d 77, 81, 278 N.E.2d 670 (1972).

**{¶ 32}** For these reasons, we overrule each of Moody's objections, accept the board's findings of fact and misconduct, and agree that an indefinite suspension from the practice of law is the appropriate sanction in this case.

### Conclusion

**{¶ 33}** Accordingly, Steven Jerome Moody is indefinitely suspended from the practice of law in Ohio. Costs are taxed to Moody.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FISCHER, and DEGENARO, JJ., concur.

FRENCH and DEWINE, JJ., dissent, and would suspend the respondent from the practice of law for two years.

_____

Dunson Law, L.L.C., and Joseph P. Dunson; and Heather M. Zirke, Bar Counsel, for relator.

Alkire & Nieding, L.L.C., Richard C. Alkire, and Dean Nieding, for respondent.

_____